1   Lawrence Riff, Cal. Bar. No. 104826
2   lriff@steptoe.com
    Morgan Hector, Cal. Bar. No. 246573
3   mhector@steptoe.com
    STEPTOE AND JOHNSON, LLP
4   633 West Fifth Street, Suite 700
    Los Angeles CA 90071
5   213.439.9494 / 213.439.9599 (fax)
6
    Carter Dillard, Cal. Bar. No. 206276
7   cdillard@aldf.org
    John Melia, Ca. Bar. No. 278323
8   jmelia@aldf.org
9   ANIMAL LEGAL DEFENSE FUND
    170 East Cotati Avenue
10  Cotati, CA 94931
11  (707) 795-2533 / (707) 795-7280 (fax)
12  Attorneys for Plaintiffs
13

```
FILED
CLERK, U.S. DISTRICT COURT

MAY - 9 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY
```

14                    **UNITED STATES DISTRICT COURT**
                  **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
15                           **WESTERN DIVISION**
16
    ANIMAL LEGAL DEFENSE FUND, a non-profit     )
17  corporation; REGAL VEGAN, INC.; SARAH       )
    EVANS; MICHELLE SCHURIG; CAROLINE           ) **CV12- 04028**ODW (PJWx)
18  LEE; DANIEL STAHLIE; FARM                   )
    SANCTUARY, a non-profit corporation;        ) **Case No.**
19  COMPASSION OVER KILLING, a non-profit       )
    corporation; and ANIMAL PROTECTION AND      )  _____
20  RESCUE LEAGUE, a non-profit corporation,    )
21                                              )
                                                )
22                      Plaintiffs,             )
                                                )
23                  v.                          ) **COMPLAINT FOR**
                                                ) **DECLARATORY AND**
24  UNITED STATES DEPARTMENT OF                 ) **INJUNCTIVE RELIEF**
    AGRICULTURE, and the Honorable TOM          )
25  VILSACK, its Secretary; and FOOD SAFETY     )
    AND INSPECTION SERVICE, and the Honorable   )
26  ALFRED V. ALMANZA, its Administrator        )
                                                )
27                                              )
                        Defendants.             )
28  _____)

─────────────────────────────────────────────
         COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
                                            DOC. # LA-211162 V.1

## **INTRODUCTION**

1.     Among the United States Department of Agriculture's (USDA) most important responsibilities is to prevent diseased and adulterated products from entering the American food supply. The Poultry Products Inspection Act (PPIA), empowering USDA to regulate the production and sale of poultry, explains that "[i]t is essential . . . that the health and welfare of consumers be protected by assuring that poultry products distributed to them are wholesome [and] not adulterated." 21 U.S.C. § 451. The PPIA goes on to prohibit the sale of products from "dead, dying, disabled, or diseased poultry" for use as human food. 21 U.S.C. § 460(d). Along with a number of other statutes, regulations, and policies administered by USDA, the PPIA recognizes that products from diseased animals are necessarily adulterated and unwholesome. *See e.g.*, 21 U.S.C. § 460(d). Pursuant to the PPIA, USDA and the Food Safety and Inspection Service (FSIS, an agency of USDA) have the responsibility to inspect poultry carcasses and products and are supposed to condemn all carcasses or products found to be adulterated. *See* 21 U.S.C. § 455.

2.     Force-fed foie gras, which consists of the pathologically diseased livers of force-fed ducks or geese, is by definition an unwholesome, adulterated poultry product that is unfit for human consumption under the PPIA. Foie gras is created by a force-feeding process called gavage, which is engineered to induce acute hepatic lipidosis, or fatty liver disease, in ducks or geese. Overwhelmed by fat deposits, the livers of force-fed birds begin to degenerate and their capacity to filter toxins from the circulatory system diminishes. Toxins accumulate in the blood, causing serious systemic diseases that require condemnation under the PPIA, 21 U.S.C. § 451 *et seq.*, its implementing regulations, and USDA agency policy.

3.     In 2007, several of the current plaintiffs petitioned USDA and FSIS to promulgate regulations condemning force-fed foie gras from the human food

1

supply. The petitioners explained that the force-feeding process necessarily induces disease, including a condition called hepatic lipidosis, in ducks and geese, and also threatens the safety of those who consume force-fed foie gras. The agencies denied the petitioners' request in 2009 in a two page decision that is arbitrary and capricious. While acknowledging that force-fed birds suffer from hepatic lipidosis, defendants nonetheless refused to condemn force-fed foie gras as unwholesome and adulterated.

4.     The agencies' denial of this petition preserves an unlawful exception to the agencies' policy of condemning products from diseased animals. As a result of this denial, Defendants continue to permit, and in fact *encourage*, federal inspectors to classify the diseased livers of force-fed birds as wholesome. Defendants effectively exempt force-fed foie gras from the scrutiny required under the PPIA, allowing foie gras producers to market diseased organs as gourmet delicacies. In doing so, Defendants frustrate Congressional intent and place American consumers at risk of food-borne illness and other diseases. This inconsistency is arbitrary, capricious and contrary to law, in violation of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(2)(a).

*Force-feeding induces disease and disability in foie gras ducks and geese*

5.     Force-fed ducks and geese suffer from numerous infections and ailments related to the force-feeding process, which compromise their health and render them adulterated.

6.     During force-feeding, the birds' livers grow to many times their natural size, causing respiratory distress, diarrhea, depression, loss of appetite, neurological damage, seizure, and even death. Injuries from gavage are common, leading to bacterial infection, fungal growth, pneumonia, and bone fractures. Harmful bacteria including *Staphylococcus aureus*, *Serratias species*,

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*Streptococcus species*, and *Escherichia coli* ("*E. coli*") have all been found in necropsies of force-fed ducks. Impaired liver function also causes harmful toxins to accumulate in the animals' blood, resulting in a number of systemic disturbances to the birds' health.

7.     These toxins and bacterial infections render force-fed ducks and geese, and their resulting poultry products, both toxic and septic, i.e, "adulterated" as defined by 9 C.F.R. § 381.83. The cumulative impacts of force-feeding and liver disease amount to "an abnormal physiological state" and "general systemic disturbance," or adulteration as defined by 9 C.F.R. § 381.83 and 9 C.F.R. § 381.86.

*Force-fed foie gras threatens human health*

8.     Force-fed foie gras is also adulterated because it contains abnormally high levels of toxins that may be dangerous to the consumer. *See* 9 C.F.R. § 381.85.

9.     A recent study published by the National Academy of Sciences links the consumption of force-fed foie gras to the development of secondary amyloidosis, a deadly disease that affects humans. *See* Record, Ex. 44, Alan Solomon *et al.*, *Amyloidgenic Potential of Foie Gras*, 104 PROC. NAT'L ACAD. SCI. 10998 (2007) at 1 [hereinafter "Ex. 44"].[1]

10.     Secondary amyloidosis begins when a soluble protein degrades and splits, creating insoluble protein fragments that take root within vital organs such

---

[1] Citations to the "Record" refer to the official administrative record pertaining to the 2007 petition. Numbered "Exhibits" refer to the exhibits attached to the 2007 petition. Once Defendants have provided the Court with a full record of the administrative proceeding, Plaintiffs will amend complaint to clarify citations if necessary.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

as the kidney, liver, or spleen. As these protein fragments attract other protein fragments, the initial deposit grows, leading ultimately to organ failure and death.

11.     The protein fragments that contribute to the development of secondary amyloidosis are induced under inflammatory conditions. People with chronic inflammatory diseases, including the 2.1 million Americans who suffer from rheumatoid arthritis, are at greater risk of developing secondary amyloidosis after eating force-fed foie gras.

12.     They are not the only consumers at risk. Because the protein deposits that support the development of secondary amyloidosis persist in the host, people who may someday develop inflammatory disease are also at increased risk.

13.     Secondary amyloidosis is not the only disease these consumers may contract after eating force-fed foie gras. The protein deposits that support secondary amyloidosis may also encourage the development of other amyloid-associated disorders including Alzheimer's disease or type II diabetes.

14.     Although the protein deposits that give rise to secondary amyloidosis are common in waterfowl generally, they are "noticeably increased in birds subjected to stressful environmental conditions as well as to the forced feeding that is used to produce foie gras." Ex. 44 at 1. Because these protein fragments originate primarily in the liver, they are particularly prevalent in foie gras, which consists of the livers of force-fed ducks and geese.

15.     The amyloidosis present in the livers of force-fed birds is a "disease which is characterized by the presence, in the meat or other edible parts of the carcass," of "toxins dangerous to the consumer," and should be condemned in accordance with 9 C.F.R. § 381.85.

16.     USDA promulgated regulations to control the spread of mad cow disease. See, e.g., 9 C.F.R. §§ 94-95; 21 C.F.R. § 589.2001. However, it facilitates the spread of secondary amyloidosis by allowing foie gras, an adulterated poultry product, the production of which is banned in more than a dozen countries, to be

4

DOC. # LA-211162 V.1

sold to unsuspecting consumers. Defendants' refusal to condemn force-fed foie gras frustrates Congressional intent and places American consumers at risk. This inconsistency is arbitrary, capricious and contrary to law in violation of the APA.

*International condemnation of force-fed foie gras*

17.    Countries around the world have banned the practice of force-feeding for foie gras production. Israel, once the world's fourth largest producer of foie gras, banned the practice in 2003. Similar bans exist in the Czech Republic, Denmark, Finland, Germany, Italy, Luxembourg, Norway, Poland, and six of Austria's nine provinces. Force feeding has also been held to be unlawful in Holland, Sweden, Switzerland, and the United Kingdom.

18.    In 2004, the state of California banned the "force feed[ing of] a bird for the purpose of enlarging the bird's liver beyond normal size." The law will take effect in July 2012.

*Procedural history*

19.    On November 28, 2007, many of the current Plaintiffs filed a rulemaking petition with Defendants seeking a rule to explicitly exclude force-fed foie gras from the human food supply as an adulterated food product, because foie gras is a product of a diseased animal and thus not fit for human consumption [Attached hereto as Appendix A; hereinafter "Plaintiffs' Petition"].

20.    On August 27, 2009, FSIS denied the petition.

21.    In their denial, FSIS conceded that the appearance of the enlarged and fatty livers of force-fed ducks and geese "might be considered abnormal" and that they "would be characterized as affected by hepatic lipidosis." *See* FSIS Response at 1 [Attached hereto as Appendix B; hereinafter "Response"].

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

1    However, FSIS declared that hepatic lipidosis in force-fed birds is normal because
2    the condition has a physiological, rather than pathological, origin. *Id.*

3        22.    FSIS further conceded that amyloidosis is common in foie gras. *See*
4    Response at 2.

5        23.    Plaintiffs have filed this suit to require FSIS to comply with its
6    statutory obligation to prevent adulterated poultry and poultry products from being
7    used for human food.

8

9    *FSIS' denial letter to Plaintiffs was insufficient to explain or support the agency's*
10   *decision*

11

12       24.    Plaintiffs' 2007 petition to Defendants was 23 pages long, and was
13   accompanied by hundreds of pages of exhibits providing support.

14       25.    Plaintiffs' contention that foie gras is diseased and harmful to human
15   health was supported by a litany of experts, as well as several articles and
16   scientific studies.

17       26.    Defendants' Response to Plaintiffs was two pages long, and was not
18   accompanied by any exhibits to support their position.

19       27.    The agency did not cite a single study, article, or expert to support its
20   determination that the hepatic lipidosis universally present in foie gras ducks or
21   geese was not a disease.

22       28.    The agency's Response further failed to explain how its position that
23   hepatic lipidosis is not a disease was consistent with other agency policy.

24       29.    The agency's Response went on to assert that Plaintiffs' explanation
25   of the health risks of force-fed foie gras required further scientific study.

26       30.    While the Response compared Plaintiffs' evidence against "other
27   studies," the agency failed to cite a single study that it consulted in determining
28   force-fed foie gras was safe for humans.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

31.     Furthermore, the letter failed to explain what kind of evidence would be sufficient to convince the agency that such a link exists.

32.     The agency's Response failed to address voluminous portions of Plaintiffs' Petition and exhibits.

33.     Where the agency did attempt to defend its position, the explanations were poorly reasoned and unsupported by any evidence.

34.     Because of these failures, FSIS's decision to deny Plaintiffs' 2007 petition on foie gras was arbitrary, capricious, and contrary to law.

## JURISDICTION AND VENUE

35.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1346 (United States as defendant) because this action arises under the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201-2, and involves the United States as a defendant.

36.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this action involves a defendant who is an employee of the Unites States acting in his official capacity, the action does not involve real property, and Plaintiff Sarah Evans resides in the Central District of California.

37.     The relief requested is specifically authorized pursuant to 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), 28 U.S.C. § 1361 (mandamus), 28 U.S.C. § 2412 (costs and fees), and 5 U.S.C. §§ 705-706 (judicial review of agency action), for violations of, *inter alia*, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Poultry Products Inspection Act, 21 U.S.C § 451 *et seq.*

///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

## INTRADISTRICT ASSIGNMENT

38.   Assignment is appropriate to the Western Division because one of the Plaintiffs resides in this district and no real property is at issue.

## PARTIES

A.   **Plaintiffs**

### Regal Vegan, Incorporated

39.   Plaintiff REGAL VEGAN, Incorporated, is a commercial enterprise headquartered in Brooklyn, New York, that produces and sells a foie gras alternative, Faux Gras. Regal Vegan's customers purchase Faux Gras as a healthier alternative to force-fed foie gras. Some consumers of force-fed foie gras are unfamiliar with the health risks and cruelty involved in its production. They mistakenly believe that Defendants condemn all poultry products that are adulterated and unwholesome, in full compliance with the PPIA.

40.   Regal Vegan suffers substantial injury from Defendants' refusal to exclude force-fed foie gras from the human food supply, pursuant to the PPIA and its implementing regulations. The availability of force-fed foie gras in the marketplace creates the perception that foie gras is fit for human consumption and free of diseases and toxins that are dangerous to consumers. This misconception encourages consumers to purchase force-fed foie gras instead of Regal Vegan's healthier, alternative product. Regal Vegan is directly disadvantaged as a result of Defendants' refusal to exclude force-fed foie gras from the human food supply. The market for Faux Gras is adversely affected by the availability of force-fed foie gras. In addition, Regal Vegan must invest resources educating consumers about the dangers of force-fed foie gras. These injuries are caused by the Defendants' failure to exclude force-fed foie gras from the human food supply. These injuries could be redressed by the relief requested in this Complaint.

///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

1

## Sarah Evans

2       41.    Plaintiff SARAH EVANS is a resident of Manhattan Beach,

3   California. Ms. Evans currently consumes meat and poultry products, including

4   force-fed foie gras and other foods containing duck or goose liver. Ms. Evans

5   consumes foie gras in California, and while traveling in other states as well. Ms.

6   Evans will continue to purchase and consume duck and goose liver products in the

7   future. Additionally, Ms. Evans attends events such as parties, weddings, and

8   fundraisers at which poultry products, including foie gras, are served. Ms. Evans

9   is concerned about eating adulterated poultry products and the associated risk of

10  contracting a food-borne illness. Due to recent scientific research showing a link

11  between inflammatory disease, amyloid-associated disorders, and the

12  consumption of force-fed foie gras, Ms. Evans is particularly concerned about

13  consuming poultry products made from force-fed birds.

14      42.    She is harmed by Defendants' failure to condemn force-fed foie gras

15  as an adulterated poultry product, as required by the PPIA, because it increases the

16  risk that she will become ill from the consumption of foie gras. The force-feeding

17  process used to create foie gras increases the risk that she may contract a food-

18  borne illness from such pathogens as *Staphylococcus aureus*, *Serratias species*,

19  *Streptococcus species*, and *E. coli*. Force-feeding also increases the risk that Ms.

20  Evans may contract an amyloid-related disease such as secondary amyloidosis,

21  Alzheimer's disease, or type II diabetes. Each time Ms. Evans consumes force-fed

22  foie gras, she is at higher risk of contracting a food-borne illness or an amyloid-

23  related disorder than if she ate a poultry product from a bird that was not force-

24  fed. Ms. Evans' injuries will be redressed if plaintiffs prevail because force-fed

25  foie gras will be removed from the market, thus decreasing her risk of contracting

26  food-borne illness or amyloid-associated disorders including secondary

27  amyloidosis, Alzheimer's disease, and type II diabetes.

28

9

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Michelle Schurig**

43.  Plaintiff MICHELLE SCHURIG resides in San Francisco, California.  Ms. Schurig currently consumes meat and poultry products, including force-fed foie gras and other foods containing duck or goose liver. Ms. Schurig consumes foie gras in California, and while traveling in other states as well. Ms. Schurig will continue to purchase and consume duck and goose liver products in the future. Ms. Schurig is concerned about eating adulterated poultry products and the associated risk of contracting a food-borne illness. Due to recent scientific research showing a link between inflammatory disease, amyloid-associated disorders, and the consumption of force-fed foie gras, Ms. Schurig is particularly concerned about consuming poultry products made from force-fed birds.

44.  Ms. Schurig is harmed by Defendants' failure to condemn force-fed foie gras as an adulterated poultry product, as required by the PPIA, because it increases the risk that she will become ill from the consumption of foie gras. The force-feeding process used to create foie gras increases the risk that she may contract a food-borne illness from such pathogens as *Staphylococcus aureus*, *Serratias species*, *Streptococcus species*, and *E. coli*. Force-feeding also increases the risk that Ms. Schurig may contract an amyloid-related disease such as secondary amyloidosis, Alzheimer's disease, or type II diabetes. Each time Ms. Schurig consumes force-fed foie gras, she is at higher risk of contracting a food-borne illness or an amyloid-related disorder than if she ate a poultry product from a bird that was not force-fed. Ms. Schurig's injuries will be redressed if plaintiffs prevail because force-fed foie gras will be removed from the market, thus decreasing her risk of contracting food-borne illness or amyloid-associated disorders including secondary amyloidosis, Alzheimer's disease, and type II diabetes.

///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

1

## Caroline Lee

2       45.    Plaintiff CAROLINE LEE resides in Douglaston, New York. Ms.

3   Lee avoids eating force-fed foie gras due to the cruelty involved in the force-

4   feeding process and the nature of the resulting diseased product. Ms. Lee has a

5   strong personal interest in ensuring that all animals raised for human use are

6   treated in a way that minimizes suffering, and that the production of poultry

7   products comports with the PPIA, its implementing regulations, and the

8   Defendants' rules mandating the condemnation of fatty, degenerated livers.

9       46.    Additionally Ms. Lee is concerned that force-fed foie gras, as

10  currently produced, may increase her risk of developing secondary amyloidosis in

11  connection with an inflammatory disease. She has a family history of

12  inflammatory disease. Based on substantial medical evidence regarding the health

13  risks of eating force-fed foie gras, Ms. Lee is fearful that she may contract serious

14  medical illnesses as a result of eating force-fed foie gras or dishes made from foie

15  gras. She is a corporate attorney and attends many events where foie gras is served

16  and may be used as an ingredient in the food she is served. Although she avoids

17  consuming foie gras, she is afraid that she may have unknowingly consumed

18  adulterated foie gras in the past as a food ingredient, or may do so in the future.

19  This substantial risk of injury remains as long as foie gras continues to be allowed

20  in the market.

21      47.    The relief requested in this Complaint would properly redress the

22  present and potential injuries to Ms. Lee's interests.

23

## Daniel Stahlie

24      48.    Plaintiff DANIEL STAHLIE is a resident of Ossining, New York.

25  Mr. Stahlie consumes meat and poultry products. Mr. Stahlie also eats force-fed

26  foie gras and other foods containing duck or goose liver when attending parties

27  and other events. He would prefer to eat duck and goose liver products that do not

28  pose the health and food safety issues discussed in this Complaint, but it would be

virtually impossible for him, as a consumer, to verify the safety and production method of every piece of food he eats. Mr. Stahlie also used to purchase force-fed foie gras for home consumption but no longer does so due to the production methods involved.  As an American consumer, Mr. Stahlie has an interest in ensuring that the products he purchases are unadulterated.  By approving force-fed foie gras for human consumption and allowing it to remain in the marketplace, Defendants have injured this interest by causing Mr. Stahlie to consume diseased and adulterated products.

49.    Mr. Stahlie is particularly concerned that force-fed foie gras, as currently produced, may increase his risk of developing a disease called secondary amyloidosis in connection with an inflammatory disease. Secondary amyloidosis is an extremely serious medical condition, which is difficult to treat and has a high mortality rate. Force-fed foie gras contains fibrils that may be transmitted to humans, form potential nucleation sites which persist in the host, and support the development of secondary amyloidosis when chronic inflammation occurs at a later date. Mr. Stahlie has a strong personal interest in ensuring that all animals raised for human use are treated with compassion, and that the production of poultry products comports with the PPIA and its implementing regulations. Based on substantial medical evidence regarding the health risks of eating force-fed foie gras, Mr. Stahlie is fearful that he may contract serious medical illnesses as a result of eating force-fed foie gras or dishes made from foie gras.

50.    The relief requested in this Complaint would properly redress the present and potential injuries to Mr. Stahlie's interests.

### Animal Legal Defense Fund

51.    Plaintiff ANIMAL LEGAL DEFENSE FUND (ALDF) is a national non-profit organization involved in every aspect of animal law. ALDF has spent over three decades focusing on issues involving animals and the law; its main focus is the use of the legal system to assist courts and legislatures in preventing

DOC. # LA-211162 V.1

1   animal cruelty and advancing the protection of the interests of animals through the
2   legal system. ALDF's groundbreaking efforts to use the legal system to end the
3   suffering of abused animals are supported by hundreds of dedicated attorneys and
4   more than 110,000 members. ALDF has been involved in the protection of
5   animals used and sold in commercial enterprises, with a focus on cruelty and
6   intensive confinement of animals used for food.

7       52.    ALDF has expended substantial organizational resources to educate
8   the public about the animal welfare and health consequences of factory farming,
9   including foie gras production. ALDF's efforts to educate the public about farm
10  conditions and to end cruel farming practices have been frustrated by Defendants'
11  unlawful encouragement of such practices. ALDF's communications department
12  has spent significant resources raising awareness about the poor living conditions
13  for ducks being raised for foie gras. ALDF has drafted press releases and has
14  initiated letter writing campaigns to oppose the inducement of disease by way of
15  force feeding in ducks raised for foie gras. In September 2011, ALDF filed a
16  petition with the United States Department of Agriculture, requesting a regulation
17  that would require all foie gras sold in the United States to carry the label "Notice:
18  Foie gras products are derived from diseased birds" in order to be permitted to
19  carry the Defendants' seal of approval and inspection. ALDF sent email alerts to
20  members urging them to contact USDA in support of the petition. The
21  organization has also spent extensive time and resources gathering information
22  about foie gras production through public records requests to federal and state
23  authorities. ALDF attorneys have spent many hours collecting expert testimony
24  and researching the law in relation to foie gras production. Each of these activities
25  has injured ALDF by consuming organizational resources that could have been
26  spent on other projects and outreach campaigns. ALDF could have avoided these
27  expenditures if Defendants had not been permitting diseased animal products into
28  the food supply in contravention of the law. These resource expenditures

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

1   constitute an injury caused by Defendants that would be redressable by a
2   favorable ruling by this court.

### Farm Sanctuary

3
4   53.   Plaintiff FARM SANCTUARY is a non-profit charitable
5   organization dedicated to protecting animals raised in the food industry. It is the
6   leading farm animal protection organization and sheltering network in the United
7   States. Farm Sanctuary strives to protect animals subjected to the cruelest agri-
8   business practices through investigations, legal and legislative actions, public
9   education, and rescue efforts. Farm Sanctuary documents the effects of
10  industrialized animal agriculture on animals, the environment, and human health.
11  Farm Sanctuary provides sanctuary to animals subjected to intensive confinement
12  and other common agri-business practices. Farm Sanctuary operates two
13  sanctuaries in California and one in New York. Farm Sanctuary and its supporters
14  are committed to ending cruel practices visited upon animals raised for food. The
15  production of foie gras is among the cruelest of industrialized farming practices
16  and may subject those who consume this product to serious health risks.

17  54.   Farm Sanctuary has expended substantial organizational resources to
18  educate the public about the animal welfare and health consequences of factory
19  farming, including foie gras production. Farm Sanctuary's efforts to educate the
20  public about farm conditions and to end cruel farming practices have been
21  frustrated by Defendants' unlawful encouragement of such practices. Farm
22  Sanctuary was the lead organization that worked on the California foie gras ban
23  that passed in 2004 (to take effect this coming July), and which consumed
24  significant organizational resources. Farm Sanctuary's communications
25  department has spent significant resources raising awareness about the poor living
26  conditions for ducks being raised for foie gras. The organization has also spent
27  extensive time and resources gathering information about foie gras production.
28  Each of these activities has injured Farm Sanctuary by consuming organizational

14

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

1  resources that could have been spent on other projects and outreach campaigns.
2  Farm Sanctuary would have avoided these expenditures if the Defendants had not
3  been permitting diseased animal products into the food supply in contravention of
4  the law. These resource expenditures constitute an injury caused by Defendants
5  that would be redressable by a favorable ruling by this court.

6  **Compassion Over Killing**

7  55.   Plaintiff Compassion Over Killing is a national nonprofit
8  organization which focuses on farmed animal issues, with its principal places of
9  business in Washington, D.C., Maryland, and California. Compassion Over
10  Killing has a nationwide supporter base of over 40,000 persons, over 3,000 of
11  whom live in California. Compassion Over Killing's purpose is to protect all
12  animals from abuse through the use of consumer education campaigns,
13  investigations, advocacy, and legal and rulemaking actions. These campaigns
14  include all farmed animals, but have historically focused largely on farmed birds,
15  including ducks.

16  56.   Compassion Over Killing has invested considerable resources in
17  investigating, educating the public about, and campaigning against foie gras. This
18  includes an investigation of Hudson Valley Foie Gras, the nation's largest foie
19  gras farm, which revealed force-feeding, among other troubling animal treatment
20  practices. Compassion Over Killing has also published educational material about
21  foie gras on its websites and printed materials, as well as letters to the editor of
22  outside publications. Compassion Over Killing also invested resources in the
23  Takoma Park, Maryland city resolution opposing foie gras production. Each of
24  these activities has injured Compassion Over Killing by consuming organizational
25  resources that could have been spent on other projects and outreach campaigns.
26  Compassion Over Killing would have avoided these expenditures if Defendants
27  had not been permitting diseased animal products into the food supply in
28

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

1    contravention of the law. These resource expenditures constitute an injury caused

2    by Defendants that would be redressable by a favorable ruling by this court.

3                    **Animal Protection and Rescue League**

4        57.    Plaintiff Animal Protection and Rescue League (APRL), incorporated

5    in California, is a national nonprofit organization that works to document and

6    expose animal cruelty, educates the public on animal issues, and works with

7    policymakers and politicians to implement humane change. APRL oversees a

8    number of campaigns aimed at bettering the lives of farmed animals and wildlife

9    across the country. It has played a large role in passing the recent California ban

10   on foie gras, and continues to fight false advertising by foie gras producers across

11   the country.

12       58.    APRL has expended substantial organizational resources to educate

13   the public about the animal welfare and health consequences of factory farming,

14   including foie gras production. APRL's efforts to educate the public about farm

15   conditions and to end cruel farming practices have been frustrated by Defendants'

16   unlawful encouragement of such practices. APRL's communications department

17   has spent significant resources raising awareness about the poor living conditions

18   for ducks being raised for foie gras. The organization has also spent extensive

19   time and resources gathering information about foie gras production. APRL

20   attorneys have spent many hours collecting expert testimony and researching the

21   law in relation to foie gras production. Each of these activities has injured APRL

22   by consuming organizational resources that could have been spent on other

23   projects and outreach campaigns.  APRL would have avoided these expenditures

24   if Defendants had not been permitting diseased animal products into the food

25   supply in contravention of the law. These and other related resource expenditures

26   constitute an injury caused by Defendants that would be redressable by a

27   favorable ruling by this court.

28   ///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

**B.**   **Defendants**

59.   Defendant TOM VILSACK is the Secretary of the Department of Agriculture, and has ultimate responsibility for the programs of USDA.

60.   Defendant ALFRED V. ALMANZA is the Administrator of FSIS, and has ultimate responsibility for the programs of FSIS.

## STATUTORY FRAMEWORK AND FACTS GIVING RISE TO PLAINTIFFS' CAUSE OF ACTION

**A.**   **Statutory and Regulatory Framework**

**1.**   **The Poultry Products Inspection Act**

61.   Enacted in 1957, the Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.*, requires that "the health and welfare of consumers be protected by assuring that poultry products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451 (as amended by the Wholesome Poultry Products Act of 1968, Pub. L. No 90-492, §2, 82 Stat. 791).

62.   Under the PPIA, all poultry carcasses and parts thereof found to be "adulterated" must be condemned and destroyed. 21 U.S.C. § 455(c). Adulterated food includes that which is "unsound, unhealthful, unwholesome, or otherwise unfit for human food." 21 U.S.C. § 453(g)(3).

63.   The PPIA prohibits the purchase, sale, transportation, or importation of "dead, dying, disabled, or diseased poultry or parts of the carcasses of any poultry that died otherwise than by slaughter," unless such transactions are made in accordance with regulations prescribed by the Secretary to "assure that such poultry, or the unwholesome parts or products thereof, will be prevented from being used for food." 21 U.S.C. § 460(d).

**2.**   **Regulations Promulgated under the PPIA**

64.   The Secretary of Agriculture or his delegate has the responsibility to promulgate rules and regulations under the PPIA. 21 U.S.C. 463(b). This

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

1   responsibility has been delegated to the Administrator of FSIS. 7 C.F.R. §

2   2.53(a)(2)(i).

3       65.    According to regulations promulgated by FSIS, adulterated poultry

4   must be condemned. 9 C.F.R. § 381.78.

5       66.    Specifically, FSIS regulations require that any part of a poultry

6   carcass affected by an inflammatory process must be condemned. 9 C.F.R. §

7   381.86. The entire carcass must be condemned if this inflammatory process is

8   associated with evidence of a general systemic disturbance. *Id.*

9       67.    FSIS regulations require the condemnation of carcasses showing

10  evidence of any septicemic or toxemic disease. 9 C.F.R. § 381.83. Carcasses

11  showing evidence of an abnormal physiologic state must also be condemned. *Id.*

12      68.    FSIS regulations further require the condemnation of carcasses

13  showing evidence of any disease that is characterized by the presence of

14  organisms or toxins dangerous to the consumer. 9 C.F.R. § 381.85.

15      69.    When, upon initial examination, an inspector is unable to make a

16  final decision on a carcass exhibiting any condition that might render the carcass

17  adulterated, FSIS regulations require that the carcass be held for further

18  examination. 9 C.F.R. § 381.77.

19      **3.    FSIS Public Health Veterinarian Training**

20      70.    On January 29, 2009, seven months before the Defendants responded

21  to Plaintiffs' Petition, FSIS issued "Multi-species Disposition Basics with a Public

22  Health Focus," a training module that helps Public Health Veterinarians identify

23  "diseases and conditions which are required by regulation to result in . . .

24  condemnation." *See* Public Health Veterinarian Training, January 29, 2009, at 3

25  [hereinafter "PHV Training"].

26      71.    This training module defines many terms "used in regulations and

27  guidance documents." *Id.* at 6.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

72.     Septicemia is defined as a "syndrome of septic bacterium accompanied by fever, hemorrhage, and severe systemic illness associated with the presence and persistence of pathogenic microorganisms or their toxin in the blood." *Id.* at 8. Septicemia is "nearly always associated with some focus of inflammation that provides a continuing supply of organisms." *Id.*

73.     Toxemia is defined as a "generalized intoxication due to the absorption and circulation in the blood of bacterial products (toxins) formed at a localized source of infection." *Id.*

74.     Degeneration is defined as a "[c]hange of tissue from a higher to a lower or less functionally active form or state." PHV Training at 9. "[T]rue degeneration" exists when "there is a chemical change in the tissue itself." Examples of degeneration include "[a]trophy, fibrosis, and necrosis." *Id.*

75.     Degeneration is distinguished from infiltration. Infiltration exists when "the change consists of the deposition of abnormal matter in the tissue." *Id.*

76.     According to this distinction, lipidosis, which is defined as a "general term for disorders of cellular lipid metabolism involving abnormal accumulations of lipids within an organ," is infiltration rather than degeneration. *Id.*

77.     Because hepatic lipidosis causes liver cells to degenerate and become less functionally active, this distinction allows livers affected by hepatic lipidosis to systematically escape condemnation. This distinction is inconsistent with and contrary to the intent of the PPIA and the regulations that require the condemnation of adulterated poultry products.

**4.     FSIS Manual on Poultry Postmortem Inspection**

78.     On March 17, 2009, five months before FSIS responded to Plaintiffs' Petition, FSIS updated the Poultry Slaughter Inspection Training Manual ("Manual"), which guides inspection personnel on the postmortem disposition of poultry. *See* Poultry Slaughter Inspection Training, March 17, 2009 [hereinafter "PSIT Manual"].

19

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

79.     The Manual lists septicemia and toxemia as diseases of "public health significance." *See* PSIT Manual at 13.

80.     According to the Manual, "[i]n septicemia the normal functions of the bird's organ systems are disrupted" and "the cells of the body deteriorate." *See* PSIT Manual at 14.

81.     The Manual offers a non-exhaustive list of signs of septicemia, which include "petechial (pinpoint) hemorrhages on the heart, liver, kidneys, muscles, and serous membranes." *Id.*

82.     The Manual defines toxemia as "poisoning caused by the absorption of toxins produced by infective organisms," noting that toxemia "shows signs similar to septicemia." *Id.*

83.     The Manual confirms that "a carcass show[ing] systemic change" should be "condemned for sep[tecimia]/tox[emia]." *Id.*

**5.     FSIS Directive on Poultry Inspection**

84.     Despite the fact that existing statutes and regulations, as described above, would require the condemnation of foie gras livers as adulterated, FSIS has issued a Directive that arbitrarily and capriciously attempts to exempt foie gras livers from the law.

85.     On April 30, 2009, FSIS issued a revision to Directive 6100.3 (Directive), which guides Public Health Veterinarians (PHVs) and other inspection personnel on the post-mortem disposition of poultry. *See* FSIS Directive 6100.3 Rev. 1 at 1 [hereinafter "Directive"].

86.     The Directive states that "PHVs play a critical role in ensuring the public health is protected by identifying and addressing poultry affected with disease conditions," and instructs PHVs to "conduct a thorough and complete post-mortem examination of carcasses or [poultry] parts." *Id.* at 7.

87.     Condemnation is required for livers exhibiting a number of conditions, including: "inflammation and necrosis," "cirrhosis," or "a specific

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

disease," including, but not limited to, "enterohepatitis," which is an inflammation of the intestine and liver. *Id.* at 11.

88.     Inspection program personnel are directed to condemn livers with "fatty degeneration," which FSIS defines as "characterized by well-defined light spots." *Id.* at 10.

89.     Inspection program personnel are directed "to consider livers with a uniform yellow color, resulting from excessive fat deposits (fatty infiltration) as wholesome." *Id.* at 10-11.

90.     The Directive illustrates the distinction between fatty degeneration and fatty infiltration by explaining that "[f]at birds, especially fowl and occasionally fryers, commonly have the uniform yellow colored liver." *Id.* at 11.

91.     Although this illustration suggests that fatty infiltration is wholesome when it is incidental to obesity, because the Directive applies generally to all poultry livers, including force-fed foie gras, it requires inspectors to consider force-fed foie gras wholesome.

92.     Condemnation is also specifically required of broiler chickens "with any amount of ascitic fluid present in the body that also has signs of septicemia … or other disease conditions, including inflammatory lesions, tumors, or other degenerative conditions." Directive at 8.

93.     The narrow scope of this instruction excludes force-fed foie gras, allowing livers diseased by hepatic lipidosis, a degenerative condition, to systematically escape condemnation. This distinction is internally inconsistent and contrary to the intent of the PPIA and the regulations that require the condemnation of adulterated poultry products.

**B.     Relevant facts**

**1. Ducks raised for the production of foie gras are force-fed.**

94.     Foie gras, or fatty liver, is created by a force-feeding process called gavage.

---

21

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

95.     During gavage, ducks are manually restrained -- usually by the neck -- while an inflexible, unlubricated tube is forcibly inserted into their esophagi. Within seconds, a large volume of nutritionally deficient corn mash is delivered through this ten-inch tube directly into the bird's stomach. *See* Record, Ex. 1, An HSUS Report: The Welfare of Animals in the Foie Gras Industry at 1 [hereinafter "Ex. 1"].

96.     This process is repeated two or three times daily for two to four weeks immediately preceding slaughter. *See* Record, Ex. 12, Steven Greenhouse, "No Days Off at Foie Gras Farm; Workers Complain, but Owner Cites Stress on Ducks," The New York Times, April 2, 2011, at B1 at 1 [hereinafter "Ex. 12"].

**2.      Ducks raised for the production of force-fed foie gras suffer from disease.**

**a.  Force-fed ducks suffer from hepatic lipidosis and hepatic steatosis.**

97.     The force-feeding of ducks for the production of foie gras creates a disease in the duck known as hepatic lipidosis, which is the condition of having an enlarged and fatty liver. *See, e.g.,* Record, Ex. 32, Affidavit of Dr. Bruce Max Feldman, DVM, dated April 8, 2006, at 2 [hereinafter "Ex. 32"] ("[H]epatic lipidosis ... [was] ... brought on directly by the force feeding process.").

98.     Hepatic lipidosis is the accumulation of lipids, or fats, in the liver, which is induced in ducks and geese through "over-feeding with a carbohydrate-rich diet." *See* Record, Ex. 55, W. Molee *et al.*, "Changes in lipid composition of hepatocyte plasma membrane induced by overfeeding in duck," Comparative Biochemistry and Physiology, B 141: 437-444, 2005 at 437 [hereinafter "Ex. 55"].

99.     Defendants concede that the appearance of the enlarged and fatty livers of force-fed ducks "might be considered abnormal" and that they "would be characterized as affected by hepatic lipidosis." *See* Response at 1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

100.   Hepatic lipidosis is also known as hepatic steatosis. *See* Record, Ex. 26, Affidavit of Dr. Greg J. Harrison, DVM, DABVP, DECAMS, dated May 25, 2006, at 3 [hereinafter "Ex. 26"] (equating hepatic lipidosis with hepatic steatosis); Ex. 35, Affidavit of Dr. Yvan Beck, dated May 10, 2006, at 3 [hereinafter "Ex. 35"] ("[T]he hepatic lipidosis / steatosis induced as a finality of the force-feeding process is a pathological condition."); Ex. 38, Affidavit of Dr. Robert E. Schmidt, DVM, PhD, DACVP, dated May 11, 2006 at 2 & 3 [hereinafter "Ex. 38"] (equating hepatic lipidosis with hepatic steatosis and citing a study in which force-fed ducks developed acute hepatic steatosis).

101.   Hepatic lipidois and hepatic steatosis are sometimes also referred to as fatty degeneration or fatty infiltration. *See* Record, Ex. 26 at 2 (equating hepatic lipidosis with fatty degeneration); Ex. 35 at 5 ("Steatosis / lipidosis belongs to a progressive degeneration process . . ."); Ex. 36, Dr. Yvan Beck, "Force-feeding of Palmipeds and Foie Gras Production: the Global Review of a Choice Made By Society," for the Licence Interfacultaire en Environment, Free University of Brussels, 1994 at 25 [hereinafter "Ex. 36"] (citing the Villimen Dictionary of Veterinary and Zoological Terms, which defines fatty-overload, hepatic steatosis, and fatty degeneration collectively).

102.   Dr. Heimann, DVM, PhD, founder of the Veterinary Pathology Department at the Institut de Pathologie et Génétique in Loverval, Belgium, prefers the term steatosis in part "because fat is not an infiltrate." (*See* Record, Ex. 37, Dr. Yvan Beck *et al.*, "Report on force feeding by Belgian Experts," presented to the Permanent Council of the European Convention on the Protection of Farmed Animals, Strasbourg, 1996, at 21 [hereinafter "Ex. 37"].)

103.   Dr. Heimann states that hepatic steatosis in force-fed ducks is "an acquired pathological process whose *first symptoms* appear as a *fatty deterioration*." *Id.* at 20-21 (emphasis added).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

104.   Given the equivalency of the terms "hepatic lipidosis," "hepatic steatosis," "fatty degeneration," and "fatty infiltration," the FSIS Directive that requires the condemnation of livers with "fatty degeneration" and the approval of livers with "fatty infiltration" is confusing and contradictory. *See* Directive at 10-11.

105.   Defendants' artificial distinction between "wholesome" fatty infiltration and "adulterated" fatty degeneration, *id*, is arbitrary, capricious, and contrary to law.

### b.  Hepatic lipidosis is pathological.

106.   Further, hepatic lipidosis is widely considered a pathology, despite the fact that it has a physiological origin and is influenced by diet and environment.

107.   For example, Dr. Heimann notes that hepatic steatosis in force-fed ducks is "an *acquired* pathological process." *See* Record, Ex. 37 at 20 (emphasis added).

108.   Dr. Heimann adds that "[t]he excessive lipid load observed in the livers of ducks and geese at the end of force-feeding is, from the anatomopathological point of view, a lesion, and *not part of the normal physiological process*." *Id*. at 25 (emphasis added).

109.   Dr. Yvan Beck, one of the foremost specialists in the world on foie gras production, agrees. In his contribution to this report, he states that steatosis "*can not be considered as a physiologically normal process*[;] steatosis of the liver is certainly a pathological liver." *Id*. at 32 (emphasis added).

110.   Further, the European Union Scientific Committee on Animal Health and Animal Welfare, an official and permanent committee of the European Commission, adopted a 93-page official report on the production of foie gras, which states that "because normal liver function is seriously impaired in birds with the hypertrophied liver which occurs at the end of force feeding this level of

DOC. # LA-211162 V.1

steatosis *should be considered pathological*." *See* Record, Ex. 13, European Union Scientific Committee on Animal Health and Animal Welfare, "The Report of the European Union Scientific Committee on Animal Health and Welfare Aspects of the Production of Foie Gras in Ducks and Geese," at 41 [hereinafter "Ex. 13"] (emphasis added).

111.    The report also states that "environmental factors can precipitate the development of a disease process in the absence of a specific pathogen." *Id.* at 4.

112.    Finally, H.L. Shivaprasad, with the University of California at Davis, notes that diet and environment influence hepatic lipidosis. *See* Record, Ex. 39, H.L. Shivaprasad, "An Overview of Avian Pathology," California Veterinary Diagnostic Laboratory System, at 26 [hereinafter "Ex. 39"]; *see also* Record, Ex. 40, Dr. Holly Nash, DVM, MS, "Fatty Liver (Hepatic Lipidosis)," Veterinary Services Department, Drs. Foster & Smith, Inc, at 2 [hereinafter "Ex. 40"] (causes of hepatic lipidosis include a high fat diet, too frequent feedings, and nutritional deficiencies).

113.    These findings directly contradict Defendants' assertion that hepatic lipidosis is "not part of the disease process," but is a "normal" condition expressing the "altered physiological state" of force-fed birds. *See* Response at 1.

114.    FSIS regulations require the condemnation of carcasses "showing evidence of an abnormal physiologic state." 9 C.F.R. § 381.83.

115.    Defendants' mischaracterization of an "altered physiological state" as a "normal" condition violates 9 C.F.R. § 381.83. Whether hepatic lipidosis is induced or incidental, the resulting liver is diseased, and therefore abnormal.

116.    Furthermore, the Directive instructs inspection personnel to condemn livers exhibiting "a specific disease." *See* Directive at 11.

117.    Defendants render this instruction confusing and contradictory when they insist that hepatic lipidosis in force-fed birds is not "part of the disease process." *See* Response at 1.

25

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

118.   Defendants' artificial distinction between diseases of pathological and physiological origin is arbitrary and capricious. Defendants wrongly focus on the cause, rather than the effect, of hepatic lipidosis, allowing diseased, unwholesome poultry to be sold to American consumers, contrary to the mandate of the PPIA.

**3.    Ducks raised for the production of force-fed foie gras suffer from numerous other serious conditions.**

119.   Force-feeding ducks for the production of foie gras creates other ailments in addition to or as a result of hepatic lipidosis. Each of these conditions further compromise the health of force-fed ducks, reducing the quality and wholesomeness of food products made from these birds. Some of these conditions explicitly require condemnation under the PPIA and other FSIS regulations.

**a.  Side effects of hepatic lipidosis**

120.   Many of the side effects experienced by force-fed birds can be traced directly to hepatic lipidosis. Basic side effects of hepatic lipidosis include obesity, depression, loss of appetite, diarrhea, and poor feathering. *See* Record, Ex. 38 at 2.

121.   Obesity contributes to respiratory distress and causes blood vessel compression, leading to circulatory problems. *See* Record, Ex. 37 at 25.

122.   Hepatic lipidosis also impairs the ability of the liver to filter toxins from the body. Left unfiltered, toxins accumulate in the circulatory system. *See* Record, Ex. 14, Carol McKenna, "Forced Feeding: An Inquiry Into the Welfare of Ducks and Geese Kept for the Production of Foie Gras," February, 2000, at 19 [hereinafter "Ex. 14"].

123.   The central nervous system is particularly sensitive to these toxins. Toxin accumulation in the central nervous systems leads to a serious condition called hepatic encephalopathy. *See* Record, Ex. 36 at 38.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

124.   Hepatic encephalopathy impairs brain function and results in seizures, lack of coordination, muscle tremors, stupor, coma, and death. *See* Record, Ex. 36 at 38; Ex. 38 at 2.

### b. Toxemia

125.   Impaired liver function also contributes to the development of toxemia, or intoxication of the blood.

126.   Toxemia is one of the "many and varied" "accidents and illness" that can occur during the course of force-feeding. *See* Record, Ex. 17, Antoine Comiti, "Rebuttal to the Claim by the INRA Researchers that Force-Feeding is Not Harmful to the Bird's Health and Liver, May 2006 at 23 [hereinafter "Ex. 17"] (citing Jean-Claude Péreiquet, *Les oles et les canards* ("Ducks and Geese"), Éditions Rustica, 1999 at 105 (cautioning that force-fed animals suffer from anoxemia, toxemia, cirrhosis of the liver, candidosis, feeding tube injuries, and internal muscular hemorrhages)).

127.   FSIS regulations require the condemnation of poultry carcasses that show evidence of any toxemic disease. *See* 9 C.F.R. § 381.83.

### c. Septicemia

128.   Septicemia is common in force-fed ducks.

129.   Laboratory reports analyzing samples taken during the necropsy of a duck removed from a foie gras facility in 2005 indicate heavy growth of two dangerous bacteria, *Serratia species* and *Escherichia coli* (*E. Coli*), and scant growth of *Streptococcus species*. *See* Record, Ex. 25, Affidavit of Dr. Holly Cheever, DVM, dated May 8, 2006, and attachments thereto, at 7 [hereinafter "Ex. 25"].

130.   Similarly, *E. Coli* and *Staphylococcus* bacteria were found in the joints of another duck removed from a foie gras production facility in 2005. *See* Record, Ex. 28, Affidavit of Meghan Beeby, dated May 22, 2006, and attachments thereto, at 10 [hereinafter "Ex. 28"].

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

131.   Necropsies from two force-fed ducks removed from a foie gras facility in 1991 revealed diffuse hepatic lipidosis and septicemia caused by *Staphylococcus auerus*. *See* Record, Ex. 21, Letter of Dr. Wendy Thatcher, DVM, dated November 15, 1991, and related animal pathology reports from the New York State College of Veterinary Medicine, dated December 6, 1991, at 3-4 [hereinafter "Ex. 21"].

132.   FSIS regulations require the condemnation of poultry carcasses that show evidence of any septicemic disease. *See* 9 C.F.R. § 381.83.

### d. Inflammatory disease

133.   Another manual for foie gras producers warns that force feeding causes latent parasitism, bacterial or fungal infections, bowel obstruction, fibrosis of the liver, hypoglycemic coma, bronchial obstruction, and enteritis. *See* Record, Ex. 17 at 23, citing Didier Villate, "Manuel pratique des maladies des palmipèdes," ("Practical guide of palmipeds' diseases"), <u>Nouvelles Éditions de Publications Agricoles</u>, 1989 at 133-39.

134.   Enteritis is an inflammation of the small intestine that usually appears at the end of the first week of force-feeding. *See* Record, Ex. 37 at 41.

135.   Necropsies performed on force-fed ducks taken from foie gras facilities reveal inflammatory disease. For instance, one necropsy noted inflammation of the liver and kidneys, and "inflammatory changes . . . in the portal tracts and in the lungs." *See* Record, Ex. 23, Affidavit of Sarahjane Blum, dated May 26, 2006, and attachments thereto, at 4 & 8 [hereinafter "Ex. 23"].

136.   Dr. Yvan Beck examined the necropsy reports from American force-fed ducks and found inflammatory lesions of cholangiohepatitis in the liver and lesions in the lungs that ranged from congestion to pneumonia. *See* Record, Ex. 35 at 7.

137.   Cholangiohepatisis is caused by a bacterial infection that results in inflammation of the liver and bile ducts. *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

138.  "Any organ or other part of a carcass which is affected by an inflammatory process shall be condemned," pursuant to FSIS regulations. 9 C.F.R. § 381.86.

139.  Because enteritis and cholangiohepatitis in force-fed ducks appears alongside "general systemic disturbance," demonstrated by the conditions detailed in this Complaint, the whole carcass should be condemned. *Id.*

### e.  Ducks removed from foie gras facilities are consistently diseased.

140.  Necropsies and examinations of force-fed ducks removed from foie gras facilities consistently reveal a litany of diseases and ailments.

141.  Many of these conditions are summarized in the American Veterinary Medical Association's House of Delegates "Position Statement on Force Feeding of Ducks and Geese to Produce Foie Gras," including: hepatic lipidosis, fractured limbs, crop impaction, aspiration pneumonia, ruptured livers, and esophageal trauma secondary to insertion of the feeding pipes, including granulomas, fungal and bacterial infections, and ruptured esophagi. (*See* Record, Ex. 29, Affidavit of Teresa Barnato, dated May 24, 2006, and attachments thereto, at 4 [hereinafter "Ex. 29"].)

142.  A necropsy performed in 2005 noted "severe steatosis of the liver, acute bronchopneumonia … consistent with … aspiration pneumonia," and "pulmonary congestion." *See* Record, Ex. 25 at 4.

143.  A necropsy performed in 2003 revealed vascular congestion in the kidney, subacute pneumonia in the lung, and inflammatory changes in the portal tracts and lung. *See* Record, Ex. 23 at 8.

144.  Vascular congestion was present in force-fed ducks examined in 2003. *See* Record, Ex. 32 at 14. These ducks also showed signs of hepatic lipidosis, yeast and bacterial infections, and hyperkeratosis. *Id.* at 14-16.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

145.   Necropsies performed in 1991 revealed hepatic lipidosis, poor feather condition, keel bursitis, bumblefoot, fungal infection, and septicemia related to the bacteria *Staphylococcus aureus*. *See* Record, Ex. 21 at 1-4.

146.   Another force-fed duck suffered from hepatic lipidosis, multiple bone fractures, osteoarthritis, ulcerative dermatitis (pressure sores), dermal necrosis, and displaced hock joints that rendered him unable to walk. *See* Record, Ex. 28 at 4-9.

147.   Two force-fed ducks removed from a foie gras facility had large, ulcerated sores on their tails. *See* Record, Ex. 32 at 9. One duck's wound was necrotic. *Id.*

### f.  American foie gras is diseased.

148.   Clinical examinations of foie gras livers obtained from Hudson Valley Foie Gras and LaBelle Farms Foie Gras revealed pathologies similar to those noted in the necropsies of ducks that were removed from foie gras facilities. *See* Record, Ex. 38 at 3.

149.   Specifically, these livers showed lipidosis, abnormal hepatocyctes, and impaired cellular function. *Id.* at 2.

150.   They also displayed "diffuse swelling and vacuolation of hepatocytes." *Id.* at 21.

151.   Because cellular vacuolation is a sign of degeneration, and lipidosis impairs the functionality of liver, this commercially available foie gras should have been condemned as adulterated, in accordance with FSIS policy and federal regulations. *See* PHV Training at 9 (degeneration defined as a "change in the tissue from a higher to a lower or less functionally active form or state"); Directive at 10 (instructing that livers with fatty degeneration are adulterated and should be condemned pursuant to 9 C.F.R. 381.78(a)).

152.   One foie gras sample also had "scattered small red foci." *See* Record, Ex. 38 at 3.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

153.    FSIS instructs poultry inspection personnel to look for "petechial (pinpoint) hemorrhages on the … liver" as a sign of septicemia. *See* PSIT Manual at 14.

154.    These small red foci indicate that potentially septic foie gras was passed as wholesome, in violation of the PPIA.

### g. European foie gras is diseased.

155.    The diseased conditions found in force-fed ducks and foie gras are not unique to American foie gras facilities. Studies of force-fed ducks and geese in European foie gras facilities indicate that force-fed foie gras is consistently diseased. Because imported force-fed foie gras is also diseased, it should also be condemned as an adulterated poultry product, in accordance with the PPIA and its implementing regulations.

156.    Dr. Yvan Beck studied necropsy results from the livers of force-fed ducks and geese taken from a slaughterhouse in Europe. These necropsies indicated frequent "lesions of the perihepatitis type," which are "the result of an inflammatory phenomenon" that Dr. Beck attributed to respiratory distress, esophageal injury, and circulatory deficiencies related to pulmonary problems. *See* Record, Ex. 37 at 32.

157.    Dr. Beck discovered necrosis in the liver, which he attributed to either respiratory or digestive infection, toxins related to unbalanced nutrition, or circulatory issues including tissue anoxia. *Id.*

158.    Dr. Beck also found signs of hypertension in the circulatory systems including ascites liquids in the abdomens, heart or kidney insufficiency, and splenomegaly, or enlarged spleen. *See* Record, Ex. 37 at 32.

159.    FSIS requires the condemnation of broiler chickens with ascites fluid in the body cavity, when these ascites are accompanied by signs of septicemia, or other disease conditions, including inflammatory lesions, or other degenerative conditions. *See* Directive at 8. However, because the scope of this instruction is

31

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

arbitrarily narrow, uniformly yellow livers from force-fed ducks with ascites liquids in their abdomens, such as those found in the European study, would be considered wholesome as required by the Directive at 10-11.

### h. Force feeding is fatal.

160.   Foie gras producers acknowledge that force-feeding has fatal side effects.

161.   The fatal effects of force-feeding demonstrate that the practice is not healthy for the birds, and that birds subject to force-feeding are diseased.

162.   Accordingly, to maximize the growth of the fatty liver, slaughter is strategically scheduled shortly before the force-fed birds would perish from their diseased state.

163.   Force-feeding is associated with an increased mortality rate. A European survey found that before slaughter force-fed ducks had a mortality rate of two to four percent, which was ten to twenty times higher than the mortality rate of ducks that were not force-fed. *Id.* at 47.

164.   The owner of Sonoma Foie Gras, a foie gras production facility in California, stated in a 2004 television interview that he limited force feeding to three to four weeks because the "ducks would become too ill and die soon after, if not slaughtered by then." *See* Record, Ex. 18, New York State Humane Association, "The Foie Gras Industry in New York," Humane Review, Winter 2005, at 1 [hereinafter "Ex. 18"].

165.   Similarly, in a European study, foie gras producers reported that "mortality increases if feeding continues for longer than usual." *See* Record, Ex. 13 at 41.

### i. Respiratory distress

166.   One common cause of mortality in force-fed ducks is respiratory distress, or dyspnea, related to hepatic lipidosis. *See* Record, Ex. 37 at 31.

32

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

167.   Hepatic lipidosis causes the liver to swell. *Id.* at 23-24. The livers of force-fed ducks grow to five to ten times their normal size during the force-feeding period. *See* Record, Ex. 17 at 9.

168.   As the liver grows, it fills the body cavity, displacing air sacs and causing respiratory distress. *See* Record, Ex. 37 at 24-25.

169.   Force-fed ducks frequently pant and gasp for breath at the end of the force-feeding period. *See* Record, Ex. 28 (veterinary examination of a nonambulatory duck rescued from a foie gras facility noting heavy breathing, panting, and bent hock joints); Ex. 34, Affidavit of Dr. Laurie Siperstein-Cook, DVM, dated May 2, 2006 and attachments thereto, at 6 [hereinafter "Ex. 34"] (noting excessive panting of ducks rescued from a foie gras production facility); Ex. 36 at 36-37; Ex. 49, Letter of Dr. Holly Cheever, DVM, Dated February 7, 2005, at 2 [hereinafter "Ex. 49"] (noting open-mouthed breathing of ducks at a foie gras facility).

170.   Respiratory distress is so common in force-fed birds that it is used to gauge when the livers should be harvested. *See* Record, Ex. 17 at 20, citing "Tout sur l'oie et le canard," a practical guide for amateur breeders published by the French store chain Gamm vert ("No particular sign allows you to determine in advance the moment when the liver is at optimal quality. The fatigued aspect of fattened poultry, … the gasping respiration, the animal that shows increasing difficulty in locomotion, are all reference points.).

**4.    The consumption of foie gras can cause serious health risks for certain members of the population.**

**a.  Consumption of foie gras increases the risk of contracting secondary amyloidosis.**

171.   Secondary amyloidosis, or AA amyloidosis, is a serious disease that affects humans.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

172.   Secondary amyloidosis "leads to hepatomegaly (enlarged liver) and kidney failure, and is ultimately fatal." *See* Record, Ex. 45, Affidavit of Dr. Whitehead, dated July 12, 2007, and attachments thereto at 2, 5 [hereinafter "Ex. 45"].

173.   The mortality rate of secondary amyloidosis is high. Forty-four percent of patients died during a recent eighty-six-month-long study of 374 people with secondary amyloidosis. *Id.*

174.   These deaths occurred under the care of "one of the best groups of specialist physicians at one of the best centers for the treatment" of secondary amyloidosis -- conditions Dr. Whitehead, a professor at the University of Pennsylvania School of Medicine, described as a "best case scenario." *Id.* at 5.

175.   Secondary amyloidosis, like other amyloidoses and prion-associated spongiform encephalopathies, including mad cow disease, is an "acquired or inherited protein folding disorder in which normally soluble proteins or peptides are converted into fibrillar aggregates." *See* Record, Ex. 44, Alan Solomon *et al.*, *Amyloidgenic Potential of Foie Gras*, 104 PROC. NAT'L ACAD. SCI. 10998 (2007) at 1 [hereinafter "Ex. 44"].

176.   Secondary amyloidosis begins when a specific soluble protein, serum amyloid A-related ("SAA") protein, degrades and splits, creating insoluble protein fragments that take root within vital organs such as the kidney, liver, or spleen. *See* Record, Ex. 45 at 4.

177.   This conversion of normally soluble proteins into fibrillar aggregates depends on a nucleation process "that can be initiated or accelerated by fibril seeds formed from ... amyloidogenic precursors that serve as an amyloid enhancing factor ("AEF")." Ex. 44 at 1.

178.   Commercially available foie gras contains serum amyloid A-related (SAA) protein. *See* Record, Ex. 44 at 1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

179.   In a 2007 study published in the Proceedings of the National Academy of Sciences, serum amyloid A-related protein fibrils (AA fibrils) from foie gras served as "a potent" amyloid enhancing factor, creating "extensive systemic pathological deposits" and enhancing the onset of secondary amyloidosis. *Id.* at 1-2.

180.   The AA fibrils in foie gras created these nucleation sites even when ingested orally. *Id.* at 2.

181.   Dr. Whitehead, who has studied SAA for more than twenty-five years, concluded "to a reasonable degree of scientific certainty" that "the similarity between SAA in mammals and birds makes it likely that the AA from duck foie gras would be able to survive in the human stomach … and ultimately form potential nucleation sites in major human organs." *See* Record, Ex. 45 at 2-3.

182.   Dr. Whitehead further notes that "cross species transmission of prion/amyloid disease through the food chain" has already been demonstrated, as humans can contract a variant Creutzfeldt-Jakob disease from "beef products derived from cattle infected with Bovine Spongiform Encephalopathy," or mad cow disease. *Id.* at 8.

### b. People with inflammatory diseases are at particular risk for contracting secondary amyloidosis.

183.   Although the prevalence of secondary amyloidosis in the human population is unknown, the majority of cases occur in people with "sustained inflammatory processes, particularly rheumatoid and juvenile chronic arthritis." *See* Record, Ex. 44 at 3.

184.   Because "exposure to . . . substances with AEF activity may be an important . . . factor in the development of AA amyloidosis in a susceptible population," the authors of the 2007 study conclude that "it would seem prudent for children and adults with rheumatoid arthritis or other diseases who are at risk for this disorder to avoid foods that may be contaminated with AA fibrils." *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

185.   In the United States, approximately 2.1 million people, or one percent of the adult population, have rheumatoid arthritis. *See* Record, Ex. 46, Medical College of Wisconsin, *Rheumatoid Arthritis* at 1 [hereinafter "Ex. 46"].

186.   Because the AA fibrils "that form potential nucleation sites may persist in the host and support the development of secondary amyloidosis when chronic inflammation occurs at a later date," consumers who may someday develop a chronic inflammatory disease are also at greater risk for contracting secondary amyloidosis after eating foie gras. *See* Record, Ex. 45 at 10-11.

## c. Consumers of foie gras may also be at risk of contracting other amyloid-associated disorders including Alzheimer's disease and type II diabetes.

187.   The amyloids in foie gras may also support the development of other amyloid-associated disorders such as Alzheimer's disease or type II diabetes. *See* Record, Ex. 44 at 3 (because "chemically heterologous fibrils can serve as AEF," "it may be hazardous for individuals who are prone to develop other types of amyloid-associated disorders" to consume foods like foie gras that are contaminated with AA fibrils).

188.   Alzheimer's disease is "an irreversible, degenerative brain disease" that affects approximately four million Americans. *See* Record, Ex. 47, The AGS Foundation for Health in Aging, *What is Alzheimer's: An Introduction to Diagnosis and Treatment*, (April 15, 1999), *available at* http://www.healthinaging.org/public_education/alz_what_is.php at 1 [hereinafter "Ex. 47"].

189.   Alzheimer's disease is always fatal and is the nation's fourth leading cause of adult mortality. *Id.* at 1-2.

190.   Because the incidence of Alzheimer's disease increases with age, the population of people with Alzheimer's is "expected to double as the Baby Boom generation matures over the next twenty years." *Id.* at 1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
DOC. # LA-211162 V.1

191.   Type II diabetes, which affects approximately sixteen million people in the United States, is "increasingly common because people are living longer, and the prevalence of diabetes increases with age." *See* Record, Ex. 48, Scott R. Votey, MD, *Diabetes Mellitus, Type 2 – A Review,* (August 2, 2011), *available at* http://www.emedicine.com/emerg/topic134.htm at 5 [hereinafter "Ex. 48"].

192.   Patients with type II diabetes suffer from a number of complications and infections, some of which are deadly. *Id.* at 9-15.

### d.  Amyloids in foie gras are dangerous to consumers.

193.   Defendants admit that "it is not uncommon to find amyloidosis" in foie gras and in ducks generally. *See* Response at 2.

194.   Although Defendants suggest that foie gras is no less safe than other poultry products made from waterfowl, the 2007 study noted that AA amyloid deposits in ducks "are noticeably increased in birds subjected to stressful environmental conditions as well as the force feeding that is used to produce foie gras." *See* Ex. 44 at 1.

195.   Federal regulations require that all poultry carcasses showing evidence of any disease characterized by the presence of organisms or toxins dangerous to the consumer must be condemned. 9 C.F.R. § 381.85.

196.   The amyloids in foie gras may be dangerous to millions of American consumers. *See* Record, Ex. 44 at 3.

197.   Despite this mandate, FSIS instructs inspection personnel to pass as wholesome fatty livers from force-fed ducks, placing millions of American consumers at risk. *See* Directive at 10-11.

///
///
///
///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

## CLAIM FOR RELIEF (DEFENDANTS' DENIAL OF PLAINTIFFS' PETITION FOR RULEMAKING WAS ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, AND OTHERWISE NOT IN ACCORDANCE WITH THE LAW UNDER THE ADMINISTRATIVE PRODEDURE ACT (5 U.S.C. § 706(2)(a)))

198.   Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

199.   By failing to condemn force-fed foie gras from the as adulterated and not fit for human consumption, Defendants unlawfully allow and encourage the production and sale of an adulterated food product in violation of the PPIA, 21 U.S.C. § 451 *et seq.*

200.   By failing to condemn force-fed foie gras from the food supply as adulterated and not fit for human consumption, Defendants unlawfully encourage the production and sale of an adulterated food product in violation of the federal food safety regulations, 9 C.F.R. §§ 381.78, 381.83, 381.85-6.

201.   Condemning force-fed foie gras as an adulterated food product, as requested in Plaintiffs' 2007 petition, would have brought Defendants' actions into compliance with the requirements of the PPIA and federal regulations.

202.   Defendants' denial of Plaintiffs' 2007 petition to promulgate a rule excluding force-fed foie gras from the food supply, as required by the PPIA and its associated regulations, was arbitrary, capricious an abuse of discretion, and otherwise not in accordance with the law under the APA, 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

1.   Declaring Defendants' practice of permitting force-fed foie gras into the human food supply to be a violation of the PPIA and its implementing regulations;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

2.     Declaring Defendants' practice of permitting force-fed foie gras into the human food supply to be arbitrary, capricious, an abuse of discretion, and not in accordance with the APA;

3.     Declaring Defendants' Denial of Plaintiffs' 2007 rulemaking petition to be arbitrary, capricious, an abuse of discretion, and not in accordance with the APA;

4.     Ordering Defendants to set aside their denial of the Plaintiffs' rulemaking petition submitted in 2007;

5.     Ordering Defendants to initiate rulemaking excluding force-fed foie gras from the human food supply as unsound, unhealthful, unwholesome, and otherwise unfit for human consumption;

6.     Awarding Plaintiffs their reasonable attorneys' fees and costs for this action, including any expert witness fees; and

7.     Granting Plaintiffs such other and further relief, legal or equitable, as this Court deems necessary and just.

Respectfully submitted this 9th day of May, 2012,

STEPTOE AND JOHNSON, LLP

By: _____
Lawrence Riff
Morgan Hector

ANIMAL LEGAL DEFENSE FUND

By: _____
Carter Dillard
John Melia

39

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT "A"

PETITION BEFORE THE
UNITED STATES DEPARTMENT OF AGRICULTURE (USDA),
FOOD SAFETY INSPECTION SERVICE (FSIS)

THE HUMANE SOCIETY OF                    )
THE UNITED STATES,                       )
    2100 L Street, N.W.                  )
    Washington, D.C. 20037,              )
                     )
FARM SANCTUARY, Inc.                     )
    P.O. Box 150                         )
    Watkins Glen, NY 14891               )
                     )
ANIMAL LEGAL DEFENSE FUND                )
    170 E. Cotati Avenue                 )
    Cotati, CA 94931                     )
                     )
NYU Student Animal Legal Defense Fund    )
    NYU School of Law                    )
    240 Mercer Street                    )
    New York, NY 10012                   )
                     )
Jessica Gorman                           )
    5 Ten Eyck Ave.                      )
    Albany, NY 12209                     )
                     )
Doris Booth                              )
    P.O. Box 129                         )
    Thompsonville, NY 12784              )
                     )
Daniel Stahlie                           )
    44 Mystic Drive                      )
    Ossining, NY 10562                   )
                     )
          *Petitioners,*                       )
                     )
     *Filed With:*                        )
                     )
CHUCK CONNER,                            )
    in his official capacity as          )
    Acting Secretary of the United States)
    Department of Agriculture,           )
                     )

OFFICE OF THE EXECUTIVE SECRETARIAT, USDA
2007 NOV 28   A 10:27

1

**EXHIBIT A - 40**

**Alfred V. Almanza,** )
in his official capacity as )
Administrator, USDA, Food Safety )
and Inspection Service )
)
)
_____ )

## PETITION FOR RULEMAKING

### I.     Introduction

This petition is submitted on behalf of the Humane Society of the United States ("HSUS"), Farm Sanctuary, Animal Legal Defense Fund ("ALDF"), NYU Student Animal Legal Defense Fund ("NYU SALDF"), Jessica Gorman, Doris Booth, Daniel Stahlie, (hereafter "petitioners") requesting rulemaking by the United States Department of Agriculture and its Food Safety and Inspection Service (collectively "USDA" or "Agency") to prohibit the introduction of force-fed foie gras into the human food supply. Pursuant to the Poultry Products Inspection Act ("PPIA"), its implementing regulations and agency policy, the USDA must inspect poultry carcasses and products and shall condemn all carcasses or products found to be adulterated. *See* 21 U.S.C. § 455 (2007).

As described herein, force-fed foie gras is a diseased poultry product made from fatty, degenerated duck or goose liver. The disease is caused through the process of force feeding or "gavage" which involves inserting a long tube down the throat of a bird, two to three times a day, and forcing a pre-measured amount of food into the bird's digestive system through the tube. After approximately 2-4 weeks of force feeding, and once the fatty, diseased liver has reached maximum size, the bird is slaughtered shortly before it would die from its diseased state.[1]

---

[1] The process of force feeding is completely unnecessary for the production of foie gras. A Spanish farmer, Eduardo De Sousa, produces foie gras without force-feeding. Mr. De

2

According to a recent study published in the Proceedings of the National Academy of Sciences, the consumption of foie gras may trigger the onset of Secondary Amyloidosis in certain people, including those with inflammatory diseases such as rheumatoid arthritis, and thus is potentially hazardous to human and public health.

Therefore, petitioners request that the USDA initiate rulemaking to exclude force-fed foie gras from the food supply as an adulterated and diseased product that is "unsound, unhealthful, unwholesome, or otherwise unfit for human food." 21 U.S.C. 453(g)(3) (2007).[2]

## II.   Interests of the Petitioners

Petitioner The HSUS is a non-profit charitable organization that promotes the protection of all animals. It maintains its headquarters in Washington DC, and is the largest animal protection organization in the United States, with more than ten million members and constituents. The HSUS' mission is to foster the humane treatment of all animals through several program initiatives: it actively advocates against practices that injure or abuse farm animals, and it promotes the humane slaughter of animals that will enter the food chain.

The HSUS offers information regarding the inhumane treatment of animals on a wide spectrum of topics including: the effects of intensive confinement and transport of

---

Sousa's farm has approximately 2,000 geese who gorge themselves on figs, acorns, lupins and olives left in piles around his 30-acre farm. Mr De Sousa's foie gras product has won the Coup de Coeur, a prestigious award from the Paris International Food Salon. *See* Telegraph.co.uk, *At last, guilt-free foie gras,* (March 11, 2007), available at http://www.telegraph.co.uk/wine/main.jhtml?xml=/wine/2007/11/03/edfoie103.xml (last visited Nov. 17, 2007).

[2] As used herein, the term "force-fed foie gras" shall refer to the liver of a duck or goose that has been specially fattened, that is, produced using a high volume of any specialized diet delivered by force feeding or "gavage."

3

farm animals, public health problems associated with the practice of slaughtering diseased animals, and other threats caused by current industrial farming and slaughter practices.   Some HSUS members and staff consume products that come from U.S. slaughter facilities -- including ducks and geese -- as well as other poultry and poultry products.   These consumers have a strong personal interest in ensuring that all animals raised for human use are treated with compassion, and that the processing of such animal products comport with the PPIA, its implementing regulations, and the Agency's declaration mandating the condemnation of adulterated, fatty, degenerated livers.

Petitioner Farm Sanctuary is a non-profit charitable organization dedicated to protecting animals raised in the "food industry." It maintains its headquarters in Watkins Glen, NY and is the leading farm animal protection organization and sheltering network in the United States.   Farm Sanctuary's mission is to protect animals subjected to the cruelest agri-business practices through investigations, legal and legislative actions, public education, and rescue efforts.   Farm Sanctuary provides sanctuary to animals subjected to intensive confinement and other "common" agri-business practices and documents the effects of industrialized animal agriculture on animals, the environment and human health.  Farm Sanctuary and its supporters are committed to ending cruel practices visited upon animals raised for food.  The production of foie gras is unquestionably among the cruelest of industrialized farming practices, and may subject those who consume this product to serious health risks.

Petitioner ALDF is a national non-profit organization involved in every aspect of animal law.  ALDF has spent nearly three decades focusing on issues involving animals and the law; its main focus is the use of the legal system to assist courts and legislatures

4

**EXHIBIT A - 43**

in carrying out the public policy against animal cruelty and advancing the protection of the interests of animals through the legal system. ALDF's groundbreaking efforts to use the legal system to end the suffering of abused animals are supported by hundreds of dedicated attorneys and more than 120,000 members. ALDF has been involved in the protection of animals used and sold in commercial enterprises, with a focus on cruelty and intensive confinement of animals used for food.

ALDF directs a significant part of its resources towards the protection of animals used for food, both through litigation and through education. ALDF has been instrumental in legal education regarding the law as it applies to all animals, and is the sponsor of over 100 Student Animal Legal Defense Funds (SALDFs). SALDFs are comprised of law students around the country. Each SALDF runs its own programs based on the desire of its members, with multiresource support from ALDF in those programs. ALDF also supports and sponsors various publications on issues pertaining to animal law, and provides support to lawyers involved in important cases seeking to increase the protection of animals in our society.

Some ALDF members eat meat and other products, including poultry products from chickens, turkeys, ducks and geese. These ALDF members seek to ensure the humane treatment of the animals they ultimately consume; they are firmly committed to the protection of those animals while the animals are alive and being raised in American facilities. They are harmed when these animals are treated cruelly or illegally, and have a strong desire to guarantee enforcement of the government's rules and regulations regarding proper treatment of animals prior to slaughter. Additionally, based on substantial medical evidence regarding the health risks of eating force-fed foie gras, those

5

members who consume these products are fearful that they may contract serious medical illnesses as a result of eating force-fed foie gras or products associated with that product.

Petitioner NYU SALDF at New York University School of Law is a student chapter of the national non-profit charitable organization Animal Legal Defense Fund. NYU SALDF is a recognized student organization of the New York University School of Law, based in the borough of Manhattan, in the state of New York, and is comprised of individuals concerned with issues relevant to the welfare of nonhuman animals, including farmed animals. NYU SALDF promotes a change in the legal status of animals, and works to end the exploitation of animals. NYU SALDF seeks to educate the public regarding the mistreatment of animals and the health implications of animal products, including farmed animals such as the birds used in the production of foie gras. NYU SALDF also engages in legal research, organizes public speaking events, and assists students in developing animal protection careers.

Petitioner Jessica Gorman is a member of petitioner HSUS and a resident of Albany County, New York.  Ms. Gorman regularly consumes food products regulated by the United States Department of Agriculture, including meat and poultry products. However, Ms. Gorman avoids eating force-fed foie gras due to the cruelty involved in its processing and diseased nature of the final product.  Although Ms. Gorman refuses to eat force-fed foie gras, she would like to eat other duck liver products that are not produced by force feeding, and are therefore not diseased products.  However, she cannot eat any duck liver products as she is unable to determine if those products resulted from force-feeding.

Ms. Gorman used to be a representative of a drug company which required her to

6

attend events with prepared food dishes.  She continues, on occasion, to eat at upscale restaurants, catered events, and parties.  On these occasions, Ms. Gorman finds it difficult or impossible to identify every ingredient that goes into a final food dish, as there are often no labels describing what a dish contains.  Ms. Gorman enjoys trying new foods, and has tried dishes at these events without knowing what they contain.  Foie gras could have been used as an ingredient in these dishes and she could have unwittingly eaten it, or could eat it in the future.

Ms Gorman is concerned that the consumption of force-fed foie gras, as currently produced, may increase the risk that she will develop a disease called Secondary Amyloidosis in connection with an inflammatory disease.  Secondary Amyloidosis is an extremely serious medical condition, which is difficult to treat and has a high mortality rate.  As the disease progresses it affect many bodily organs, leading to an enlarged liver, kidney failure, and ultimately death.  Foie gras contains fibrils that may be transmitted to humans, form potential nucleation sites which persist in the host, and support the development of Secondary Amyloidosis when chronic inflammation occurs at a later date.  Ms. Gorman does not believe she has an inflammatory disease at this time, but she is concerned because she is only 33 years old and as such could develop one in the future.  Force-fed foie gras also poses a second health risk to Ms. Gorman.  Ms. Gorman is concerned that the consumption of force-fed foie gras may increase the risk that she will develop Alzheimer's disease.  She believes she is already at an increased risk of developing Alzheimer's disease because she has two grandparents who developed it.  Ms. Gorman has a strong personal interest in ensuring that all animals raised for human use are treated with compassion, and that the production of poultry products comports with

7

the PPIA, its implementing regulations, and the Agency's rules mandating the condemnation of fatty, degenerated livers.

Petitioner Doris Booth is an adult individual residing in Thompsonville, New York. Ms. Booth consumes meat and poultry products, but avoids eating force-fed foie gras due to the cruelty involved in the force-feeding process and the nature of the resulting diseased product. As a state licensed wildlife rehabilitator who has cared for many types of wild and domesticated birds, including geese and ducks, Ms. Booth believes the process of force feeding to induce a diseased liver product is incredibly cruel. Ms. Booth is so upset by the force-feeding practice that she avoids driving by Hudson Valley Foie Gras, which is located near her home.

While Ms. Booth avoids eating force-fed foie gras, she does consume food products regulated by the United States Department of Agriculture, including meat and poultry products. Ms Booth is very concerned that she may have unknowingly eaten force-fed foie gras in the past as a food ingredient, or may do so in the future – which has and will continue to put her at an increased food safety risk. Ms. Booth has a strong personal interest in ensuring that all animals raised for human use are treated with compassion, and that the production of poultry products comport with the PPIA, its implementing regulations, and the Agency's rules mandating the condemnation of fatty, degenerated livers.

Petitioner Daniel Stahlie is an adult individual residing in Ossining, New York. Mr. Stahlie regularly consumes food products regulated by the United States Department of Agriculture, including meat and poultry products. Mr. Stahlie also eats force-fed foie gras and other foods containing duck or goose liver, including pâté, when attending

8

parties and other events. He would prefer to eat duck and goose liver products that do not pose the health and food safety issues discussed in this Petition, but it would be virtually impossible for him, as a consumer, to verify the safety and production method of every piece of food he eats. Mr. Stahlie also used to purchase force-fed foie gras for home consumption but no longer does so due to the production methods involved.

Mr. Stahlie is particularly concerned that the production of force-fed foie gras, as currently produced, may increase his risk of developing a disease called Secondary Amyloidosis in connection with an inflammatory disease. Secondary Amyloidosis is an extremely serious medical condition, which is difficult to treat and has a high mortality rate. Force-fed foie gras contains fibrils that may be transmitted to humans, form potential nucleation sites which persist in the host, and support the development of Secondary Amyloidosis when chronic inflammation occurs at a later date. Mr. Stahlie has a strong personal interest in ensuring that all animals raised for human use are treated with compassion, and that the production of poultry products comport with the PPIA, its implementing regulations, and the Agency's rules mandating the condemnation of fatty, degenerated livers.

### III.  Action Requested

Pursuant to the Right to Petition Government Clause contained in the First Amendment of the United States Constitution, U.S. CONST. AMEND. 1, the Administrative Procedure Act, 5 U.S.C. § 553(e) (2007), and the USDA's implementing regulation, 7 C.F.R. § 1.28 (2007), the undersigned submit this citizen petition for rulemaking under the PPIA, 21 U.S.C. § 451 et seq. (2007), requesting that the Secretary initiate rulemaking to require force-fed foie gras processors to comply with the express intent of

9

Congress to prevent poultry products which are "unsound, unhealthful, unwholesome, or otherwise unfit for human food," *id.* at § 453(g)(3), from entering the human food supply -- thereby protecting the public from consuming diseased, adulterated poultry products.

### V. Factual Background

#### A. Production of Force-Fed Foie Gras in the United States

There are only three US facilities known to petitioner that produce and process force-fed foie gras. One is located in California and two are located in New York State. It is estimated that among these three facilities approximately 500,000 birds are slaughtered per year which results in thousands of pounds of force-fed foie gras entering interstate commerce every week.[3]

One facility, Artisan Foie Gras, is located in Sonoma, California[4] and the remaining two, Hudson Valley Foie Gras (HVFG) and LaBelle Farms (LaBelle), are both located in New York State.[5] All three farms produce foie gras using the same cruel force-feeding process, all have their own slaughter and processing facilities and all are subject to the PPIA, its implementing regulations and Agency policy.[6]

---

[3] An HSUS Report: The Welfare of Animals in the Foie Gras Industry (citing personal correspondence with Marcus Henley, operation manager, Hudson Valley Foie Gras, July 6, 2006). *See* Ex. 1.

[4] While all U.S. foie gras producers discussed in the instant petition use force feeding or "gavage" to create hepatic lipidosis in each bird, the practice and end product will be illegal in California in 2012. On September 30, 2004, California Gov. Schwarzenegger signed SB120 into law. *See* Ex. 2, CAL. HEALTH & SAFETY CODE §§ 25981, 25982 (West 2007). This bill proscribes the production and sale of foie gras in California.

[5] According to a report produced for HVFG, "New York State is home to two of the U.S.'s three Foie Gras producers." *See* Ex. 3, Thomas J. Shepstone, Shepstone Management Company, "The Economic Importance of the New York State Foie Gras Industry, Prepared for: Sullivan County Foie Gras Producers," March 2004.

[6] All facilities inspected pursuant the Federal Meat Inspection Act or the Poultry Products Inspection Act are assigned an establishment number by the Food Safety and Inspection Service. According to the Meat, Poultry and Egg Product Inspection Directory, Hudson

10

According to HVFG, an entity based in Ferndale, New York, foie gras is "the fattened liver of a waterfowl . . . produced by a special feeding process." *See* Ex. 4, Hudson Valley Foie Gras, Inc., "About Hudson Valley Foie Gras: What Is Foie Gras?" HVFG describes its product as liver "characterized by two lobes, putty beige in color, and slightly firm to the touch. Foie gras livers can weigh upwards of two pounds, with the average falling around a pound and a half. About 80 percent of a foie gras is comprised of fat . . . ." *See* Ex. 5, Hudson Valley Foie Gras, Inc., "Foie Gras: The Ultimate Millennial Luxury" and "Fresh Foie Gras (Duck), Grade A." HVFG sells several grades and forms of foie gras, including Grades A, B, and C whole, raw and unprocessed livers. *See* Ex. 6, D'Artagnan Catalog, "Hudson Valley Foie Gras" and Enjoy Foie Gras, "Hudson Valley Fresh Foie Gras Grade B, raw"; Ex. 7, Amazon.com, "Duck Foie Gras," "Fresh foie gras grade B," and "Fresh foie gras grade C."

In addition to HVFG, LaBelle Farm, part of Bella Poultry, Inc., also of Ferndale, New York produces and sells force-fed foie gras. *See* Ex. 8, Prairie Harvest Specialty Foods, "Product & Price List." Artisan Foie Gras in California also sells comparable force-fed foie gras products. *See* Ex. 9, Artisan Foie Gras, Retail Price List August 2007, (October 25, 2007).

Records produced by the New York Department of Environmental Conservation in response to a request under the Freedom of Information Law, New York Public Officers Law section 84, *et seq.* (McKinney 2007), confirm the production of foie gras in the state and identify the special feeding process noted above as "forced feeding." *See* Ex. 10, NYDAM,

---

Valley Foie Gras has two establishment numbers, P17966 and P8757; Artisan Foie Gras, listed as Grimaud Farms of California, has establishment number P18438; and La Belle Farm Inc. has establishment number P19150.

11

**EXHIBIT A - 50**

Freedom of Information appeal response, January 25, 2006 (providing an inspection report for Hudson Valley Foie Gras, LLC, foie gras production facility, May 2005); Ex. 11, NYDAM, Freedom of Information request response, November 14, 2005 (providing partial inspection reports for LaBelle Farm, Inc., foie gras production facilities, in 2002-2004).

Interviews of workers employed by HVFG indicate that the feeding process consists of mechanical force-feeding of the subject animals three times a day for a thirty-day period, after which the animal is slaughtered. *See* Ex. 12, Steven Greenhouse, "No Days Off at Foie Gras Farm; Workers Complain, but Owner Cites Stress on Ducks," The New York Times, April 2, 2001, at B1. Records produced by the New York Empire State Development Corporation indicate that HVFG currently raises an estimated 250,000 ducks annually for the production of foie gras.

**B.      Force Feeding Induces Liver Disease in Ducks and Geese**

In 1998, the European Union Scientific Committee on Animal Health and Animal Welfare, an official and permanent committee of the European Commission, in response to a request for an official opinion on the production of foie gras, adopted a 93-page official report. In the report, the Committee took up the issue of whether the production method used to produce foie gras induces disease in the subject animals. After noting that "disease is by definition a pathological state where the causal factors are often clearly identified and the clinical signs well defined," the Committee concluded that "because normal liver function is seriously impaired in birds with the hypertrophied liver which occurs at the end of force feeding this level of steatosis *should* be considered pathological." *See* Ex. 13, European Union Scientific Committee on Animal Health and Animal Welfare, "The Report of the European Union Scientific Committee on Animal Health and Animal Welfare on Welfare

12

Aspects of the Production of Foie Gras in Ducks and Geese," adopted by the Committee, December 16, 1998, Brussels (emphasis added).

The Committee went on to note that "[i]f birds with good welfare and a large, but not pathologically changed, liver are produced, a high fat content pâté would have to be produced by the addition of fat." *Id.* In considering mortality rates as an indicator of the pathological effects of the process, the Committee also noted that "[t]he mortality rate in force fed birds varies from 2% to 4% in the two week force feeding period compared with around 0.2% in comparable ducks." *Id.*

The production of force-fed foie gras, including specific analysis of and reference to the production process at the California and New York facilities described above, has since been examined by national organizations focused on animal health and welfare. Their analyses have uniformly concluded that force-fed foie gras production induces liver disease. *See, e.g.,* Ex. 14, Carol McKenna, "Forced Feeding: An Inquiry Into the Welfare of Ducks and Geese Kept for the Production of Foie Gras," February 2000. "[A]s a result, various metabolites appear in the blood that are usually stopped by the liver (ammonium, mercaptans, short-chain antigens) and that may then reach the central nervous system (particularly sensitive to these compounds) and trigger central nervous troubles such as circling movements, epileptiform crisis, and increase of the intracranial pressure accompanied by migraines, and finally stupor, coma and death." *See* Ex. 15, Farm Sanctuary, Inc., "The Welfare of Ducks and Geese in Foie Gras Production: A Summary of the Scientific and Empirical Evidence," 2004; *see also* Ex. 16, Foundation, French League of Animal Rights, "Critical Analysis of the Report of the Scientific Committee on Welfare Aspects of the Production of Foie Gras in Ducks and Geese," April 2000, and Ex. 17,

13

Antoine Comiti, "Rebuttal to the Claim by INRA Researchers that Force-Feeding Is Not Harmful to the Bird's Health and Liver," May 2006.

A recent report published by the New York State Humane Association, an organization comprised of and representing official state humane law enforcement entities throughout the state, refers to the production of foie gras at the New York facilities noted above, and states that "foie gras is made by force feeding ducks . . . for a period of two to four weeks to produce a liver that is so infiltrated with fat as to be grossly distended and is in failure." *See* Ex. 18, New York State Humane Association, "The Foie Gras Industry in New York," Humane Review, Winter 2005 (also referring to the induction of hepatic lipidosis (steatosis) in the liver as a disease, and to resulting diseases including hepatic encephalopathy). As discussed further below, necropsies of birds retrieved from a California foie gras farm also show evidence of hepatic lipidosis. *See infra* Ex. 32.

### C.     Examination of Animals Used in Foie Gras Production

In 1991, Dr. Ward Stone, New York State Wildlife Pathologist employed by the New York State Department of Environmental Conservation, performed necropsies on two ducks obtained from the foie gras production process at Commonwealth Enterprises, Inc. (a former company that engaged in force-fed foie gras production), also based in Sullivan County, New York, and concluded that the process "creates a diseased condition in each duck," and asked that the process be halted. *See* Ex. 19, Letter of Dr. Ward Stone, New York State Wildlife Pathologist, New York State Department of Environmental Conservation, dated November 14, 1991; *see also* Ex. 20, Letter of Dr. Ward Stone, dated September 2005 (concluding that "the overloading of the liver with lipid (lipidosis) is a pathological process . . ."). Also in 1991, Dr. Wendy Thacher, DVM, provided a report with similar conclusions, based on

14

necropsies of other ducks taken from the foie gras production process which were performed at the New York State College of Veterinary Medicine. She noted various secondary infections and illnesses attributable to the production process. *See* Ex. 21, Letter of Wendy Thacher, DVM, dated November 15, 1991, and related animal pathology reports from the New York State College of Veterinary Medicine, dated December 6, 1991.

One year later, after a police investigation of Commonwealth Enterprises, three veterinarians, including Dr. Thacher, reiterated these conclusions, based on their personal visits to the production facility and their viewing of hundreds of animals used in the production process — many or most of whom exhibited symptoms consistent with the diseases and illnesses described above. *See* Ex. 22, Letter of Lucille R. Kaplan, dated April 3, 1992, with affidavits by Dr. Tatty Hodge, Dr. Mark Lerman, and Dr. Wendy Thacher attached thereto.

In 2002 and 2003, necropsies performed on birds used by HVFG in its foie gras production process confirmed that the animals suffered from severe hepatic lipidosis and other related illnesses such as pneumonia. *See* Ex. 23, Affidavit of Sarahjane Blum, dated May 26, 2006, and attachments thereto. Video and photos taken at the facility showed animals exhibiting the symptoms of illnesses consistent with literature analyzing foie gras production and its impact on animal health. *See* Ex. 24, Affidavit of Ryan Noah Shapiro, dated May 20, 2006, and attachments thereto.

Again in 2005, necropsies on several ducks used in HVFG's foie gras production process performed at Cornell University by New York State Wildlife Pathologist Dr. Ward Stone, showed ducks suffering from hepatic lipidosis, pneumonia, secondary infections, and other maladies attributable to the production process. *See* Ex. 25,

15

Affidavit of Holly Cheever, DVM, dated May 8, 2006, and attachments thereto.[5]  It was

determined that hepatic lipidosis and related illnesses caused the death of the animals. An

analysis of feed actually used in the production process confirmed that, consistent with

the literature described above, such feed was nutritionally inadequate and a contributing

factor to the disease.  *See id.*; Ex. 26, Affidavit of Greg J. Harrison, DVM, DABVP,

DECAMS, dated May 25, 2006, and attachments thereto.  Furthermore, video and photos

taken at the facility showed dozens of birds exhibiting the expected symptoms and the

corpses of birds that likely died as a result. *See* Ex. 27, Affidavit of John Doe, dated May

22, 2006, and attachments thereto; Ex. 28, Affidavit of Meghan Beeby, dated May 11,

2006, and attachments thereto; Ex. 25, Affidavit of Dr. Holly Cheever, DVM, dated May

8, 2006, and attachments thereto.[6]

---

[5] *See also* Ex. 49, Letter of Dr. Holly Cheever, DVM, dated February 7, 2005 (describing in detail the symptoms these animals exhibit when afflicted with hepatic lipidosis and related illnesses); Ex. 50, Letter of Dr. Holly Cheever, DVM, dated January 29, 1997 (describing in detail her visit to HVFG, including the conditions and state of the animals she encountered therein).

[6] These veterinarians' findings are also consistent with a recent statement regarding foie gras production adopted by over 1,600 licensed veterinarians. Among other findings, the veterinarians stated that

> Necropsies performed on birds from foie gras producers show lesions, including but not limited to: hepatic lipidosis; esophageal trauma secondary to insertion of the feeding pipes (granulomas, fungal and bacterial infections, ruptured esophagi); also fractured limbs, crop impaction, aspiration pneumonia, and ruptured livers. In many cases since the food is observed to be spilling out of their esophagi, mouths, and nares, pathologists have determined that the birds died during the force feeding process.

*See* Ex. 29, Affidavit of Teresa Barnato, dated May 24, 2006, and attachments thereto. *See also* Ex. 30, Petition of New York state licensed veterinarians supporting anti-foie gras legislation.

16

**EXHIBIT A - 55**

Necropsies performed on birds taken from force-fed foie gras production facilities in California also show that the animals suffered from hepatic lipidosis and a variety of other illnesses caused by the production process, all completely consistent with the analysis of the animals described above, and consistent with literature on the production process. *See* Ex. 31, Michelle Locke, "Activists Decry How Ducks Are Raised for Foie Gras; French Delicacy Made From Livers of Force-Fed Ducks," The San Diego Union Tribune, December 3, 2003, at A11; Ex. 32, Affidavit of Dr. Bruce Max Feldmann, DVM, dated April 8, 2006, and attachments thereto; Ex. 33, Affidavit of Bryan Pease, Esq., dated May, 8, 2006; Ex. 34, Affidavit of Dr. Laurie Siperstein-Cook, DVM, dated May 25, 2006, and attachments thereto.

### D. Experts' Opinions Regarding Foie Gras and Specific Animals Used in Foie Gras Production

Yvan Beck, DVM, one of the foremost specialists in the world on foie gras production, and upon whom the European Union Scientific Committee on Animal Health and Animal Welfare relied in part in its 1998 report, states that

> [t]he direct consequence of a chronic accumulation of lipids in the hepatic cell (steatosis) is the progressive appearance of secondary necrotic phenomena which, at the end of their evolution, will cause a generalized fibrosis of this organ. All the liver diseases causing a fibrosis interfere with the hepatic vascularization and are at the origin of vascular anastomoses. These shunts bypass the hepatocyte, an intermediary between the splanchnic circulation and the portal system. They also cause the manifestations of hepatic encephalopathy described.

*See* Ex. 35, Affidavit of Dr. Yvan Beck, dated May 10, 2006, and attachments thereto; Ex. 36, Dr. Yvan Beck, "Force-feeding of Palmipeds and Foie Gras Production: The Global Review of a Choice Made By Society," for the Licence Interfacultaire en Environment, Free University of Brussels, 1994; Ex. 37, Beck Y, Guilmot JM, Heymann

17

M, Van Bercham V, "Report on force feeding by Belgian Experts," presented to the Permanent Council of the European Convention on the Protection of Farmed Animals, Strasbourg, 1996. Dr. Beck also notes that the evidence described above regarding foie gras production in New York is consistent with his general findings.

Greg Harrison, DVM, DABVP, DECAMS, a leading author and recognized expert in avian medicine, having analyzed the various necropsies and other evidence regarding foie gras production in New York, and relying on treatises and recently published studies, states that the evidence indicates

> various forms of what is generally known as hepatic lipidosis, a disease indicated by yellow discoloration and hepatomegaly (enlargement) of the liver due to fatty degeneration and subsequent impairment of the parenchymal cells, which can eventually lead to liver failure and death of birds diagnosed with it. Put simply, the cellular changes associated with hepatic lipidosis alter the ability of the liver to function normally, resulting in impaired animal health and if left untreated, death.

See Ex. 26, Affidavit of Greg J. Harrison, DVM, DABVP, DECAMS, dated May 25, 2006, and attachments thereto.

Robert E. Schmidt, DVM, PhD, DACVP, a board-certified veterinary pathologist, avian medicine expert, and author of several authoritative texts on avian pathology, concludes that "[h]epatic lipidosis can be accompanied by various clinical signs including anorexia, depression, diarrhea, biliverdinuria, obesity, poor feathering, dyspnea, and abdominal enlargement, and via impairment of the liver's function, may lead to hepatic encephalopathy, with clinical signs of seizures, ataxia, and muscle tremors." See Ex. 38, Affidavit of Robert E. Schmidt, DVM, PhD, DACVP, dated May 11, 2006, and attachments thereto.

In addition to relying on various published studies, and an examination of the various

18

necropsies and other evidence regarding foie gras production in New York described above,

Dr. Schmidt personally examined samples of livers from birds used in force-fed foie gras

production at HVFG and LaBelle, and determined that:

> all of the liver samples showed abnormal hepatocytes (liver cells),
> representing a pathological condition, which would impair cellular
> functions, and which in turn can lead to clinical illness. This condition,
> known as hepatic lipidosis or hepatic steatosis, is well documented in
> published literature, and recognized as a metabolic disease.

*Id.*  His general conclusion regarding the disease and its relation to the foie gras production

process is consistent with the opinion of other leading avian veterinarians and avian

pathologists in the field, including Dr. H.L. Shivaprasad.  *See* Ex. 39, H.L. Shivaprasad, "An

Overview of Avian Pathology," California Veterinary Diagnostic Laboratory System, Fresno

Branch, University of California, Davis (referring to hepatic lipidosis as a disease); Ex. 40,

Holly Nash, DVM, MS, "Fatty Liver (Hepatic Lipidosis)," Veterinary Services Department,

Drs. Foster & Smith, Inc.

Dr. Schmidt's conclusion is also consistent with those of other leading animal welfare

experts, including Dr. Ian Duncan, Chair of Animal Welfare at the University of Guelph; Dr.

Christine Nicol, Professor of Animal Welfare at the University of Bristol; and Dr. Nedim C.

Buyukmihci, Professor of Veterinary Medicine (Emeritus) at the University of California,

Davis.  *See* Ex. 41, Letter of Dr. Ian Duncan, dated February 4, 2004; Ex. 42, Letter of Dr.

Christine Nicol, dated February 3, 2004; Ex. 43, Letter of Dr. Nedim C. Buyukmihci,

V.M.D., dated February 12, 2004.

### E.  Experts' Opinions Regarding Potential Human Health Risks from Foie Gras Consumption

Apart from the cruelty and the overwhelming evidence that the force-feeding

process results in a diseased liver, the end product itself may cause health risks to a

19

significant portion of its consumers.  Dr. Alan Solomon, M.D., a researcher at the University of Tennessee Graduate School of Medicine and director of the Human Immunology and Cancer/Alzheimer's Disease and Amyloid-Related Disorders Research Program, led a team of scientists that published a study finding that amyloid was present in foie gras purchased from commercial vendors. They concluded that an amyloid-containing food product, specifically foie gras, "hastened the development of amyloid protein A amyloidosis in a susceptible population [of humans]." *See* Ex. 44, Alan Solomon *et al.*, *Amyloidogenic Potential of Foie Gras*, 104 PROC. NAT'L ACAD. SCI. 10998 (2007).

Based on their experiment, using commercial foie gras, the authors determined that

> exposure to exogenous substances with [amyloid enhancing factor] activity also may be an important epigenetic or environmental factor in the development of AA amyloidosis in a susceptible population. In this regard, it would seem prudent for children and adults with rheumatoid arthritis or other diseases who are at risk for this disorder to avoid foods that may be contaminated with AA fibrils. . . Further, the fact that chemically heterologous fibrils can serve as [amyloid enhancing factor] . . . suggests that it may be hazardous for individuals who are prone to develop other types of amyloid-associated disorders, e.g. Alzheimer's disease or type II diabetes, to consume such products.

*Id.*

Dr. Alexander Steven Whitehead, D.Phil., a Professor of Pharmacology at the University of Pennsylvania School of Medicine, has researched Serum Amyloid A, Amyloid A, and Serum Amyloid P (materials associated with Secondary Amyloidosis) since 1984.  It is his opinion that amyloid protein A ("AA") amyloidosis, also known as Secondary Amyloidosis, is an extremely serious medical condition in humans, which is difficult to treat and has a high mortality rate. *See* Ex. 45, Affidavit of Dr. Whitehead, ¶

20

11.

It is Dr. Whitehead's opinion that

> AA Amyloid fibrils are present in duck foie gras, and that the similarity
> between SAA in mammals and birds makes it likely that AA from duck
> foie gras would be able to survive in the human stomach, be absorbed
> through the human intestinal tract and ultimately form potential nucleation
> sites in major human organs. Therefore, avoidance of foods that may be
> contaminated with AA fibrils, such as duck foie gras, might be important
> for those who have an inflammatory disease, like rheumatoid arthritis, or
> who could develop an inflammatory disease in the future. Such individuals
> may be placed at an increased risk of developing Secondary (or AA)
> Amyloidosis from eating foie gras containing AA fibrils.

*Id.* at ¶ 5. Dr. Whitehead also explains that the Solomon *et al.* article raises the possibility that AA fibrils, such as those in foie gras, may lead to the development of other amyloid diseases, including Alzheimer's disease. *Id.* at ¶ 29.

This information is particularly alarming when considering the number of people who face an increased risk of harm through the consumption of force-fed foie gras. Consumers with inflammatory diseases face an increased risk of developing secondary amyloidosis. Additionally, there a multitude of known inflammatory diseases affecting millions of Americans. This is illustrated by looking at the numbers of those affected by only one relatively common inflammatory disease: rheumatoid arthritis. The Medical College of Wisconsin reports that approximately 2.1 million people, or 1% of the population have rheumatoid arthritis.[7]

Those Americans with inflammatory diseases are not the only members of the population who are at risk. Consumption of force-fed foie gras may lead to an increased risk in the development of other amyloid diseases such as Alzheimers and type II

---

[7] *See* Ex. 46, Medical College of Wisconsin, *RheumatoidArthritis* (October 25, 2007), *available at http://healthlink.mcw.edu/article/952625523.html.*

21

diabetes.  The AGS Foundation for Health In Aging reports that Alzheimer's accounts for more than half of all adult dementia ("AD"), affecting approximately 4 million Americans. Because the incidence of AD increases with age -- it afflicts 10% of 65-year-olds compared to 50% of those 85 and older -- the Alzheimer's population is expected to double as the Baby Boom generation matures over the next 20 years.[8]  Furthermore, Scott R. Votey, MD, Assistant Dean for Graduate Medical Education and Professor of Medicine/Emergency Medicine at the David Geffen School of Medicine at UCLA writes that approximately 13 million people in the United States have a diagnosis of diabetes, and diabetes is undiagnosed in another 5 million. Approximately 10% have type 1 diabetes, and the rest have type 2.[9]  This means that approximately 16.2 million Americans have type II diabetes.

If one only considers the number of those with Alzheimer's disease, rheumatoid arthritis and type II diabetes, approximately 22.3 million Americans are implicated.  That number represents only a portion of the population at risk from the consumption of force-fed foie gras, but is staggering nonetheless.

## VI.    Legal Grounds for the Petitioned Action

The PPIA was enacted in order to "prevent the movement or sale in interstate or foreign commerce of . . . poultry products which are adulterated or misbranded."  21 U.S.C. § 452 (2007). The term "adulterated" applies to any poultry product if "it consists in whole or in part of any filthy, putrid, or decomposed substance *or* is for any other

---

[8] *See* Ex. 47, The AGS Foundation for Health In Aging, *What is Alzheimer's: An Introduction to Diagnosis and Treatment* (October 25, 2007), *available at* http://www.healthinaging.org/public_education/alz_what_is.php.
[9] *See* Ex. 48, Scott R. Votey, MD, *Diabetes Mellitus, Type 2 – A Review*, (October 25, 2007), *available at* http://www.emedicine.com/emerg/topic134.htm.

22

reason *unsound, unhealthful, unwholesome, or otherwise unfit for human food.*" *Id.* at § 453(g)(3) (emphasis added). *See also* 9 C.F.R. § 381(d)(iii) (2007). Once poultry products are found to be adulterated, those products shall be condemned. 21 U.S.C. § 455(c) (2007). A "poultry product" is defined as "any poultry carcass, or part thereof; or any product which is made wholly or in part from any poultry carcass or part thereof . . ." 21 U.S.C. § 453(f) (2007). Force-fed foie gras fits squarely within this definition as a diseased product, and thus rulemaking should be initiated to exclude processors from releasing it into the human food supply.

## VII.    Conclusion

The foregoing evidence, and all of the appended exhibits and attachments thereto, demonstrate that force-fed foie gras is the product of a diseased animal, that the livers comprising such foie gras are fatty and degenerated, and that a significant portion of consumers face an increased health risk from its consumption. Accordingly, petitioners respectfully request that the Secretary initiate rulemaking to exclude force-fed foie gras from the human food supply as it is "unsound, unhealthful, unwholesome, or otherwise unfit for human food."

Respectfully Submitted,

Peter J. Petersan, Esq.
Carter Dillard, Esq.
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L St., N.W.
Washington, DC 20037
202-452-1100
Fax: 202-778-6132

23

EXHIBIT "B"



**United States**
**Department of**
**Agriculture**

Food Safety
and Inspection
Service

Washington, D.C.
20250

AUG 2 7 2009

Peter J. Petersan, Esq.
The Humane Society of the United States
2100 L Street, NW
Washington, DC 20037

Dear Mr. Petersan:

The Food Safety and Inspection Service (FSIS) has completed its review of the November 28, 2007, petition submitted by you on behalf of The Humane Society of the United States and various other organizations requesting that the Agency prohibit for use as human food foie gras made from the livers of force-fed poultry. The petition asserts that foie gras is an adulterated and diseased product that is "unsound, unhealthful, unwholesome, or otherwise unfit for human food" under the Poultry Products Inspection Act (PPIA) (21 U.S.C. 453(g)(3)). As discussed below, FSIS has determined that the presence of fatty change in a duck or goose liver used to produce foie gras alone does not render the foie gras adulterated or otherwise unfit for human food. The Agency has also concluded that additional research is needed on the potential human health effects associated with the consumption of foie gras. Therefore, we are denying your petition. We apologize for the delay in responding to your petition, but our resources for petition review are limited.

According to the petition, force-fed foie gras is a diseased poultry product made from fatty, degenerated duck or goose liver. More specifically, the petition asserts that the animal raising practices associated with the production of foie gras cause ducks and geese to contract "hepatic lipidosis," a fatty liver condition that renders the liver "unfit for human food" within the meaning of the adulteration provisions of the PPIA.

When evaluating the petition, FSIS considered the condition of the livers of ducks and geese used to produce foie gras, and the Agency acknowledges that the appearance of the livers of these birds would be characterized as affected by hepatic lipidosis. However, the Agency also determined that the fatty liver used for foie gras is the result of a physiologic condition, i.e., overwhelming of the hepatocyte's ability to process and export fat, rather than disease. Thus, while the appearance of the foie gras liver, both grossly and microscopically, might be considered abnormal because it differs from a liver from a bird on a diet that contains less fat and carbohydrate, the fatty changes are exactly those that would be expected due to the altered physiologic state of the bird. Thus, the condition of the foie gras liver is not a "disease," as suggested in the petition, because it is normal for the bird in that state. While there are conditions in which hepatic lipidosis, in conjunction with other changes, such as hemorrhage, necrosis, inflammation, or fibrosis, would be considered part of the disease process, FSIS does not consider hepatic lipidosis due to a physiologic condition, to be one of them.

To support the action requested in the petition, you also submitted an article published in the Proceedings of the National Academy of Sciences that, according to the petition,

Mr. Petersan                                                               Page 2

suggests that that consumption of foie gras may trigger the onset of Secondary Amyloidosis in certain people, including those with inflammatory diseases, such as rheumatoid arthritis.[1]  In the study, researchers analyzed several commercial sources of foie gras and found that they contained amyloid. Mice genetically susceptible to develop Secondary Amyloidosis were then injected with or fed amyloid extracted from the foie gras. Afterwards, the study reported that a majority of these animals developed amyloid deposits in the liver, spleen, intestine and other organs.

FSIS has reviewed the article and has determined that it relays little information that has not previously been reported in other studies on amyloidosis in waterfowl. Amyloidosis is fairly common in ducks in general, not just those used to produce foie gras. It is not uncommon to find both amyloidosis and hepatic lipidosis in the same bird. Because of this, it is not surprising to find that the foie gras in the study contained amyloid enhancing factor.

In addition, the findings in the study are based on the administration of amyloid to genetically susceptible mice under experimental conditions. The study does not present any data to establish a link between the presence if amyloid in foie gras and the development of human disease. To establish any link between the two conditions, or the potential effect on human health of consuming amyloid, will require additional scientific study.

For the reasons stated above, FSIS has determined that foie gras made from the livers of force-fed poultry is not an adulterated and diseased product and is not "unsound, unhealthful, unwholesome, or otherwise unfit for human food" under the Poultry Products Inspection Act (21 U.S.C. 453(g)(3)). Therefore, FSIS is denying your petition.

You may contact Mary Porretta, Petition Manager, Policy Issuances Division, at (202) 720-5627, if you have any questions regarding the status of your petition.

Sincerely,

Philip S. Derfler
Assistant Administrator
Office of Policy and Program Development

---

[1] Alan Solomon, MD, *et al.*, *Amyloidogenic Potential of Foie Gras*, 104 PROC. NAT'L ACAD. SCI. 10998 (2007)

**EXHIBIT B - 64**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Otis D. Wright II and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV12- 4028 ODW (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Lawrence P. Riff, Esq. (Bar No. 104826)
Morgan Hector, Esq. (Bar No. 246573)
Steptoe & Johnson LLP
633 W. Fifth Street, Suite 700
Los Angeles, CA  90071 (213) 439-9400

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ANIMAL LEGAL DEFENSE FUND, a non-profit
corporation; REGAL VEGAN, INC.; SARAH
EVANS; (addt'l parties on attachment)

PLAINTIFF(S)

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, and the Honorable TOM
VILSACK, its Secretary; (addt'l parties on attachment)

DEFENDANT(S).

CASE NUMBER

# CV12-04028 ODW (PJWX)

**SUMMONS**

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __60__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Lawrence Riff and Morgan Hector,_____, whose address is _Steptoe & Johnson LLP, 633 W. Fifth St., Suite 700, Los Angeles, CA  90071_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: May 9, 2012

By: _____

**JULIE PRADO**        SEAL

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

ANIMAL LEGAL DEFENSE FUND, a non-profit )
corporation; REGAL VEGAN, INC.; SARAH )
EVANS; MICHELLE SCHURIG; CAROLINE )
LEE; DANIEL STAHLIE; FARM )
SANCTUARY, a non-profit corporation; )
COMPASSION OVER KILLING, a non-profit )
corporation; and ANIMAL PROTECTION AND )
RESCUE LEAGUE, a non-profit corporation, )
)
                  Plaintiffs, )
    v. )
)
UNITED STATES DEPARTMENT OF )
AGRICULTURE, and the Honorable TOM )
VILSACK, its Secretary; and FOOD SAFETY )
AND INSPECTION SERVICE, and the Honorable )
ALFRED V. ALMANZA, its Administrator )
)
                Defendants. )
_____ )

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOC. # LA-211162 V.1

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>ANIMAL LEGAL DEFENSE FUND, a non-profit corporation; REGAL VEGAN, INC.; SARAH EVANS; MICHELLE SCHURIG; CAROLINE LEE; DANIEL STAHLIE; FARM SANCTUARY, a non-profit corporation;<br><br>(see attachment for additional Plaintiffs) | **DEFENDANTS**<br>UNITED STATES DEPARTMENT OF AGRICULTURE, and the Honorable TOM VILSACK, its Secretary; and FOOD SAFETY AND INSPECTION SERVICE, and the Honorable ALFRED V. ALMANZA, its Administrator |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Steptoe & Johnson LLP<br>633 W. Fifth Street, Suite 700<br>Los Angeles, California | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☑ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
5 U.S.C. Section 706(2)(a) challenge to action of federal agency as arbitrary, capricious and an abuse of discretion.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV12-04028**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (Sarah Evans) | San Diego County (ARPL); San Francisco County (Schurig); Sonoma County (ALDF); New York (Regal Vegan, Inc.; Lee; Stahlie; Farm Sanctuary); District of Columbia (Compassion Over Killing) |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (Sarah Evans) | San Diego County (ARPL); San Francisco County (Schurig); Sonoma County (ALDF); New York (Regal Vegan, Inc.; Lee; Stahlie; Farm Sanctuary); District of Columbia (Compassion Over Killing) |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  5 - 8 - 12

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## ATTACHMENT TO CIVIL COVER SHEET

**Additional Plaintiffs**:
COMPASSION OVER KILLING, a non-profit corporation; and ANIMAL PROTECTION
AND RESCUE LEAGUE, a non-profit corporation.