1   Lawrence Riff, Cal. Bar. No. 104826
2   lriff@steptoe.com
    Morgan Hector, Cal. Bar. No. 246573
3   mhector@steptoe.com
    STEPTOE AND JOHNSON, LLP
4   633 W. Fifth St., Ste 700 Los Angeles, CA 90071
5   213.439.9494 / 213.439.9599 (fax)

6   Carter Dillard, Cal. Bar No. 206276
7   cdillard@aldf.org
    John Melia, Ca. Bar No. 278323
8   jmelia@aldf.org
    ANIMAL LEGAL DEFENSE FUND
9   170 East Cotati Ave., Cotati, CA 94931
10  (707) 795-2533 / (707) 795-7280 (fax)

11  Attorneys for Plaintiffs

12              **UNITED STATES DISTRICT COURT**
13       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                    **WESTERN DIVISION**
14

15  ANIMAL LEGAL DEFENSE          )   Case No. 12-cv-04028-ODW(PJWx)
    FUND, a non-profit corporation; et )
16  al.,                             )   Hon. Otis D. Wright II
                                     )
17                    Plaintiffs,   )   PLAINTIFFS' OPPOSITION TO
18          v.                       )   DEFENDANTS' MOTION FOR
                                     )   JUDGMENT ON THE PLEADINGS
19  UNITED STATES DEPARTMENT        )   OR IN THE ALTERNATIVE FOR
20  OF AGRICULTURE, and the          )   SUMMARY JUDGMENT; REPLY
    Honorable TOM VILSACK, its       )   IN SUPPORT OF PLAINTIFFS'
21  Secretary; et al.,               )   MOTION FOR SUMMARY
                                     )   JUDGMENT
22                    Defendants.    )
23                                   )   [Per Court-Ordered Briefing Schedule]
                                     )
24                                   )   Date:  March 11, 2013
25                                   )   Time: 1:30 p.m.
                                     )   Place: Courtroom 11 – Spring Street
26                                   )   Pretrial Conference:  April 15, 2013
                                     )   Trial Date:  May 7, 2013
27                                   )
28  _____ )

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  Defendants' Motion for Judgment on the Pleadings Should Be Denied
     Because Plaintiffs Have Sufficiently Alleged and Do In Fact Have Standing. 3

     A.  Plaintiffs' Allegations Establish Standing. .................................................. 3

         1.  Judgment on the Pleadings Standard - Standing. .................................. 4

         2.  Standing Under the APA – The "Zone of Interests" and Procedural
             Right to Challenge Agency Action. ......................................................... 5

         3.  The Individual Plaintiffs' Alleged Increase in Health Risks Is Not
             Speculative. .............................................................................................. 5

         4.  Knowledge of the Potential Harm from Consuming Force-Fed Foie
             Gras Does Not Eliminate Standing. ......................................................... 8

         5.  The Harm Incurred in Avoiding Consumption of Force-Fed Foie Gras
             Is Sufficient to Confer Standing. ........................................................... 11

         6.  Regal Vegan Has Standing As a Competitor. ....................................... 11

         7.  The Organizational Plaintiffs Have Standing Because Their Missions
             Include Protecting Consumer Health. ................................................... 12

     B.  Plaintiffs Do In Fact Have Standing; Defendants Did Not Contest
         Plaintiffs' Motion for Summary Judgment on Standing. .......................... 14

III. Summary Judgment Should Be Granted in Favor of Plaintiffs and Defendants'
     Motion in the Alternative for Summary Judgment Should Be Denied. .......... 14

     A.  Plaintiffs' Object to Evidence Outside the Administrative Record
         Submitted Concurrently with Defendants' Cross-Motion. ....................... 15

     B.  Large Portions of Evidence Do Not Pertain Solely to Animal Welfare;
         They Demonstrate Force-Fed Foie Gras Is "Adulterated" Under the PPIA
         and Presents Various Health Risks to Consumers. .................................. 17

     C.  The Solomon Study Demonstrates the Consumption of Force-Fed Foie
         Gras Constitutes a Potential Risk to Human Health and Is Therefore
         "Adulterated" and "Unfit for Human Consumption" Under the PPIA. ... 20

         1.  Secondary Amyloidosis and the Petition. ............................................. 20

         2.  The Denial and Defendants' Opposition. ............................................. 21

         3.  There is no Rational Connection Between the Finding that Additional
             Study is Required and the Denial. ......................................................... 22

i

IV. An Order Directing Defendants to Initiate Rulemaking is Appropriate in the
    Present Case.................................................................................................. 23
V.  CONCLUSION ............................................................................................. 24

ii

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Am. Horse Prot. Ass'n, Inc. v. Lyng*,
    812 F.2d 1 (D.C. Cir. 1987)..............................................................................24

*Animal Defense Council v. Hodel*,
    840 F.2d 1432 (9th Cir. 1988) .........................................................................16

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
    397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) .........................................8

*Baur v. Veneman*,
    352 F.3d 625 (2d Cir. 2003) .........................................................................7, 8

*Bennett v. Spear*,
    520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) ..............................5, 12

*Beno v. Shalala*,
    30 F.3d 1057 (9th Cir. 1994) ...........................................................................19

*Cabral v. Supple, LLC*,
    Case No. 12–00085–MWF, 2012 WL 4343867 (C.D. Cal. Sept. 19,
    2012) ................................................................................................................10

*Cafasso v. General Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir.2011) ............................................................................4

*Cutler v. Kennedy*,
    475 F.Supp. 838 (D.D.C. 1979)........................................................................11

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir.2006) .........................................................................8, 11

*Fair Housing of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002) ...........................................................................13

*Florida Power & Light v. Lorion*,
    470 U.S. 729 (1985).........................................................................................23

*Fortyune v. American Multi–Cinema, Inc.*,
   No. CV 10–5551, 2002 WL 32985838 (C.D. Cal. Oct. 22, 2002)
   (Manella, J.) ............................................................................................... 10

*Friends of the Earth, Inc. v. Gaston Copper Recycling, Corp.*,
   204 F.3d 149(4th Cir. 2000) (en banc) ..................................................... 7

*Friends of the Earth v. Hintz*,
   800 F.2d 822 (9th Cir. 1986) ............................................................ 15, 16

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 ....................................... 13

*Henderson v. Gruma Corp.*,
   2011 WL 1362188 (C.D. Cal. Apr.11, 2011).......................................... 9, 10

*Koehler v. Litehouse, Inc.*,
   Case No. 12-cv-04055, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ......... 9, 10

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005) ................................................................. 16

*Larsen v. Trader Joe's Co.*,
   C 11–05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ...................... 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ............................. 4, 5

*Lujan v. National Wildlife Fed'n*,
   497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ............................... 4

*Massachusetts v. EPA*,
   549 U.S. 497, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) ........................... 5, 19

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)...............................................................17, 18, 23

*Nat. Cred. Union Admin. v. First Nat. Bank & Trust Co.*,
   522 U.S. 479, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) ................................... 5

*National Customs Brokers & Forwarders Ass'n v. United States*,
   883 F.2d 93 (D.C. Cir. 1989)................................................................24

iv

*Public Citizen v. Heckler*,
   653 F. Supp. 1229 (D.D.C. 1986)..................................................................24

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v.*
   *U.S. Dept. of Agriculture*,
   415 F.3d 1078 (9th Cir. 2005) ....................................................................13

*Sierra Club v. Morton*,
   405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) .......................................13

*South Austin Coalition Comm. v. SBC Communications*,
   274 F.3d 1168 (7th Cir.2001) ......................................................................4

*Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*,
   100 F.3d 1443 (9th Cir. 1996) .....................................................................15

*Stauber v. Shalala*,
   895 F.Supp. 1178 (W.D.Wis.1995) ...............................................................7

*U.S. v. Bacto-Unidisk*,
   394 U.S. 784 (1969).................................................................................19

*Warth v. Seldin*,
   422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) .......................................13

*Wooden v. Bd. Of Regents of the Univ. Sys. of Ga.*,
   247 F.3d 1262 (11th Cir.2001) ..................................................................8, 9

*WWHT, Inc. v. Federal Communications Com.*,
   656 F.2d 807 (D.C. Cir. 1981)....................................................................23

STATUTES

5 U.S.C. § 702....................................................................................................5

5 U.S.C. § 706.............................................................................................15, 20

21 U.S.C. § 451...........................................................................................12, 22

21 U.S.C. § 452...........................................................................................20, 21

21 U.S.C. § 453..............................................................................................18

21 U.S.C. § 460..............................................................................................18

21 U.S.C. § 476b ................................................................................................. 19

**CODE OF FEDERAL REGULATIONS**

9 C.F.R. §§ 381.78 .............................................................................................. 19

9 C.F.R. § 381.83 ................................................................................................ 18

9 C.F.R. § 381.86 ................................................................................................ 18

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(c) ............................................................... 4

OPPOSITION TO CROSS-MOTION; REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No. 12-04028-ODW

Plaintiffs submit the following (1) Opposition to Defendants' Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment and (2) Reply in Support of Plaintiffs' Motion for Summary Judgment, per the Court's ordered briefing schedule. Plaintiffs also interpose their objections to specified portions of the Declarations of Alice M. Thaler and W. Scott Hafner submitted by Defendants in support of their Motion and Opposition, as more fully set forth in Plaintiffs' Statement of Genuine Issues of Material Fact and Plaintiffs' Objections to Evidence, filed concurrently herewith.

## I.    **INTRODUCTION**

Defendants' standing argument, on which they devote the majority of their memorandum, must be rejected. Although Defendants contend that the individual Plaintiffs' harms are "far too speculative" or are the individual Plaintiffs' own fault, and that all five of the organizational Plaintiffs are outside the Poultry Product Inspection Act's ("PPIA") "zone of interests," it is just not true.

Plaintiffs have sufficiently alleged – and do in fact have – standing, because Defendants' failure to initiate rulemaking has caused the following specific harms:

- The increased risk of amyloid-related disease from the consumption of force-fed foie gras;
- The increased risk of exposure to various pathogens, such as *E. coli*, from the consumption of force-fed foie gras;
- The harm to a producer of a foie gras substitute that is forced to compete with force-fed foie gras; and
- The costs to various organizations in working, consistent with their missions, to prevent the entry of force-fed foie gras into the food supply and educate consumers of force-fed foie gras as to its health risks.

Increased risk constitutes "injury in fact" and confers standing under Article III. That some of the individual Plaintiffs may now be aware of force-fed foie gras's

1

negative health risks does not prevent them from seeking prospective relief. Additionally, each of the organizational plaintiffs falls within the PPIA's "zone of interests," which protects not only human consumers, one of the goals of each of the organizational plaintiffs, but the integrity of the marketplace as well. All nine Plaintiffs indisputably have standing to seek relief in this lawsuit.

The merits section of Defendants' memorandum – which cites to a mere *nine* pages out of the almost 1,600 pages in the administrative record – is remarkably unmeritorious.  Defendants' position can be distilled to two arguments—both incorrect. First, Defendants argue the Petition for rulemaking was almost entirely devoted to concerns for animal welfare (it was not), and was thus "properly ignor[ed]" as "irrelevant evidence" without so much as a mention in the agency's denial letter. Second, ignoring large portions of the administrative record, Defendants argue that the "Solomon Study" is "[t]he only support for plaintiffs' assertion that foie gras is a threat to human health," which they contend was insufficient to support the Petition.

In fact, the record shows just the opposite on both points. There is very substantial record evidence that the Agency failed to consider showing force-fed poultry suffers from toxemia, septicemia, systemic inflammation, and other conditions rendering force-fed foie gras "adulterated" under the PPIA *and Defendants' own regulations*, and also shows an increased risk to consumers of contracting pathogens such as *E. coli*. Thus, while Plaintiffs contend even the Solomon study alone was sufficient to support the requested rulemaking, it is simply false that the Solomon study was the Petition's only evidence of risks to human health. There is no way that this record fairly can be seen as limited to "animal welfare" and not involve food safety.

*///*

## II.   Defendants' Motion for Judgment on the Pleadings Should Be Denied Because Plaintiffs Have Sufficiently Alleged and Do In Fact Have Standing.

### A.   Plaintiffs' Allegations Establish Standing.

Defendants move for judgment on the pleadings on the sole ground that each of the nine plaintiffs in this action lack standing. Defts. Cross-Mot at 6-14; Defts. Notice of Motion. Defendants specifically argue (1) the individual Plaintiffs' alleged increased risk of developing an illness is "far too speculative" to constitute "injury in fact"; (2) the individual Plaintiffs that allege they consume or may consume foie gras lack standing because they, knowledgeable of the risks, can simply avoid it; (3) Regal Vegan, Inc., a manufacturer of a substitute product to foie gras, is not within the "zone of interests" protected by the PPIA; and (4) the remaining organizational plaintiffs care only about animal welfare, and are therefore also outside the "zone of interests" protected by the PPIA. *Id.*

Each of Defendants' arguments fails. An increased risk of harm to a consumer of food products due to the government's failure to enforce applicable regulations is sufficient to constitute "injury in fact" for purposes of Article III standing. Furthermore, that some of the Plaintiffs are aware of the potential risk from force-fed foie gras does not eliminate standing to seek prospective relief. Were it otherwise, no such relief could ever be sought. And separately, the costs incurred by some of the Plaintiffs to *avoid* force-fed foie gras, an injury ignored by Defendants, constitute "injury in fact." Regarding Regal Vegan, Defendants are simply incorrect that the PPIA "exclusively" protects consumers. One of its stated goals is to protect "markets," and interstate commerce generally, from the presence of adulterated poultry products. Finally, Defendants mischaracterize the remaining organizational Plaintiffs as concerned only about animal welfare. Each of these Plaintiffs has as part of its mission the protection of the food supply from certain products and the education of consumers of the health risks associated with

consuming these products, including force-fed foie gras. That a plaintiff may have multiple subjective interests, *e.g.*, animal welfare *and* food safety, does not deprive a plaintiff of standing should one such interest be sufficient to confer standing.  Defendants ought not be able unilaterally to decide and characterize plaintiffs' interests and motivations for the purpose of depriving Plaintiffs of their day in court.

### 1.    Judgment on the Pleadings Standard - Standing.

Standing, a fundamental jurisdictional requirement, is subject to the same proof requirements as other contested factual issues. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Thus, standing *allegations* need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury.[1]  *See id.* (recognizing that "[a]t the pleading stage, general factual allegations of injury ... may suffice [to establish standing], for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim' ") *quoting Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).  Of course, under federal pleading rules, "[c]omplaints need not be elaborate, and in this respect injury (and thus standing) is no different from any other matter that may be alleged generally." *See South Austin Coalition Comm.Council v. SBC Communications*, 274 F.3d 1168, 1171 (7th Cir.2001).

*///*

---

[1]     Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." Fed.R.Civ.P. 12(c). A Rule 12(c) motion is " 'functionally identical' " to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard applies. *Cafasso v. General Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011).

## 2. Standing Under the APA – The "Zone of Interests" and Procedural Right to Challenge Agency Action.

To have standing, a plaintiff must show a concrete and particularized injury that is actual or imminent, fairly traceable to the defendant, and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). However, where a litigant has been "accorded a procedural right to protect his concrete interests" – here, the right to challenge agency action unlawfully withheld – the litigant "can assert that right without meeting all the normal standards for redressability and immediacy." *Massachusetts v. EPA*, 549 U.S. 497, 517-518, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) quoting *Lujan*, *supra*, 504 U.S. at 572, n. 7. There need only be "some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.*

Further, under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Standing under this section is proper where the plaintiff's interests "*arguably* fall within the zone of interests protected or regulated by the statutory provision . . . invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162–63, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (emphasis added). The "zone of interests" test requires the court to discern the interests "arguably to be protected" by the statute and then to determine if the plaintiff's interests are among them. *Nat. Cred. Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 492, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998).

## 3. The Individual Plaintiffs' Alleged Increase in Health Risks Is Not Speculative.

Defendants' primary argument is that Plaintiffs' allegations of injury in fact are simply "far too speculative." Defts. Mot. at 11-12. Defendants argue that,

because "nowhere in the complaint is there an allegation that any plaintiff, or indeed anyone at all, has ever developed any type of illness from foie gras[,]" standing is absent. *Id*. This is a shocking misstatement of the law. Can defendants seriously content that a plaintiff has no standing until he or she has actually been harmed as opposed to "merely" having accurately perceived a real risk of harm and wishes to avoid suffering that harm?

Plaintiffs allege in the Complaint that by allowing force-fed foie gras into the food supply, Defendants "place American consumers at risk of food-borne illness and other diseases." Complaint ¶4. Because of the force-feeding process, force-fed foie gras "contains abnormally high levels of toxins that may be dangerous to the consumer." *Id*. ¶8. Specifically, Plaintiffs allege a link "between the consumption of force-fed foie gras to the development of secondary amyloidosis, a deadly disease that affects humans." *Id*. ¶9. These same protein deposits "encourage the development of other amyloid-associated disorders including Alzheimer's disease or type II diabetes." *Id*. ¶11. They are also "noticeably increased in birds subjected to . . . the forced feeding that is used to produce foie gras [and] [b]ecause these protein fragments originate primarily in the liver, they are particularly prevalent in foie gras . . . ." *Id*. ¶14. Further, Plaintiffs allege the force-feeding process increases the risk that pathogens such as *Staphylococcus aureus*, *Serratias species*, *Streptococcus species*, and *E. coli* will be found and contracted by consumers. *Id*. ¶6. These pathogens can cause serious illness once contracted. *See, e.g., id*. ¶42.

As a result, by permitting force-fed foie gras to persist in the food supply, consumers of poultry products are at an increased risk of harm, from the exposure to pathogens such as *E. coli*., to the development of amyloid related illness, such as secondary amyloidosis , Alzheimer's, and type II diabetes. *Id*. ¶187-192. Each of the individual Plaintiffs alleges that he or she has previously consumed force-fed foie gras. Complaint ¶¶41 (Plaintiff Evans); 43 (Schurig); 45 (Lee); 48

1  (Stahlie). Plaintiffs Schurig and Evans allege that they will continue to consume
2  foie gras (*id.*, ¶¶41, 43), while Plaintiffs Lee and Stahlie allege they will try to
3  avoid consumption, but may inadvertently do so (*id.* ¶¶ 46, 49). Each is concerned
4  that he or she "may contract serious medical illnesses as a result of eating force-
5  fed foie gras or dishes made from foie gras," and that this substantial risk of injury
6  remains as long as foie gras continues to be allowed in the market. *Id.*, ¶¶ 42, 44,
7  46.

8      These allegations of an increased risk of harm, *which must be taken as true*,
9  are sufficient to establish standing. *Baur v. Veneman*, 352 F.3d 625, 635 (2d Cir.
10  2003) is on point and very instructive. In *Baur*, the plaintiff filed suit seeking
11  judicial review of the decision of the USDA to deny his petition to ban the use of
12  "downed livestock" (livestock that cannot remain standing or move unassisted – a
13  symptom associated with mad cow disease) as food for human consumption. The
14  USDA argued the plaintiff lacked standing because the harm alleged was not an
15  actual illness, only the increased risk of contracting an illness.

16      The *Baur* court disagreed, and found the increased *potential* risk of injury
17  after consuming "downed livestock" was enough of an "injury-in-fact" to confer
18  standing. *Id.* at 643. "Like threatened environmental harm, the potential harm
19  from exposure to dangerous food products or drugs 'is by nature probabilistic,' yet
20  an unreasonable exposure to risk may cause cognizable injury." *Id.* at 634, citing
21  *Friends of the Earth, Inc. v. Gaston Copper Recycling, Corp.*, 204 F.3d 149, 160
22  (4th Cir. 2000) (en banc). The *Baur* court went on to hold that "[i]n the specific
23  context of food and drug safety suits," "enhanced risk" injuries "are cognizable
24  for standing purposes, where the plaintiff alleges exposure to potentially harmful
25  products." *Id.*; *see also Stauber v. Shalala*, 895 F.Supp. 1178, 1187-88
26  (W.D.Wis.1995) (holding, in case brought under Food and Drug Act, that
27  "increased risk of potential harm that the consumer must bear is an injury in fact
28  for standing purposes" and holding that plaintiffs demonstrated standing where

they alleged, as milk consumers, "exposure to a potentially dangerous drug" in dairy products).

As in *Baur*, the individual Plaintiffs here have alleged an adequate injury-in-fact for standing purposes. These Plaintiffs have alleged an increased risk of injury from the consumption of force-fed foie gras stemming from Defendants' failure to follow a food safety consumer protection statute, the PPIA, and thus they have standing.[2] *Wooden v. Bd. Of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1280 (11th Cir.2001) ("[S]tanding simply means that the plaintiff is entitled to 'walk through the courthouse door' and raise his grievance before a federal court.").

### 4.   Knowledge of the Potential Harm from Consuming Force-Fed Foie Gras Does Not Eliminate Standing.

Defendants also attack the standing of Plaintiffs Evans, Schurig, Stahlie, and Lee on the grounds that, since these Plaintiffs are aware of force-fed foie gras's health risks, they *themselves* are the cause of any harm they may suffer, *not* Defendants' failure to prevent force-fed foie gras from entering the food supply. Defts. Cross-Mot. at 8-10. In the case of Plaintiffs Evans and Schurig, who allege they will continue to eat foie gras, Defendants argue these Plaintiffs lack standing

---

[2]   Plaintiffs' Lee and Stahlie's fear and anxiety from the increased risk of developing an amyloid-related disease and other health problems (Complaint ¶¶46 (Lee), 48 (Stahlie)) are also sufficient to confer standing. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264-65 (2d Cir.2006) ("An injury-in-fact may simply be the fear or anxiety of future harm. For example, exposure to toxic or harmful substances has been held sufficient to satisfy the Article III injury-in-fact requirement even without physical symptoms of injury caused by the exposure, and even though exposure alone may not provide sufficient ground for a claim under state tort law."). The *Denney* court further observed that the risk of future harm may also involve "economic costs, such as medical monitoring and preventative steps; but aesthetic, emotional or psychological harms also suffice for standing purposes." *Id*. at 265 citing *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

because they can simply stop eating the product. *Id*. at 8-9. Regarding Plaintiffs Stahlie and Lee, who seek to avoid but may inadvertently eat foie gras, Defendants argue if they do so, it is because of their failure to ensure they did not. *Id*. at 9-10.

Defendants' "coming to the harm" argument fails, and has been specifically and repeatedly rejected in the context of a consumer who is aware of and has suffered harm from past violations of a consumer protection statute, and seeks prospective relief to prevent future harm from those same violations. This issue was addressed, for example, in the analogous cases of *Koehler v. Litehouse, Inc.*, Case No. 12-cv-04055, 2012 WL 6217635, *3 (N.D. Cal. Dec. 13, 2012) and *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7 (C.D. Cal. Apr.11, 2011). In both cases, the plaintiffs brought claims under various California consumer protection statutes, and the defendant argued that plaintiffs lacked Article III standing because they had averred that, now that they knew the truth about the product, they would no longer purchase it. 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011). The courts in *Koehler* and *Henderson* rejected this argument. From *Henderson*:

> If the Court were to construe Article III standing as narrowly as Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ... and would never have Article III standing.... While Plaintiffs may not purchase the same Gruma products as they purchased during the class period, because they are now aware of the true content of the products, to prevent them from bringing suit would surely thwart the objective of California's consumer protection laws.

*Id*. at *7–8. Similarly, in *Koehler* the court concluded that to find a lack of standing "would eviscerate the intent of the California legislature in creating

consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Koehler* at *6, citing *Fortyune v. American Multi–Cinema, Inc*., No. CV 10–5551, 2002 WL 32985838, at *7 (C.D. Cal. Oct. 22, 2002) (Manella, J.) ("If this Court rules otherwise [and does not find standing], like defendants would always be able to avoid enforcement of the ADA"); accord *Larsen v. Trader Joe's Co*., C 11–05188 SI, 2012 WL 5458396, at *3–4 (N.D. Cal. June 14, 2012); *Cabral v. Supple, LLC*, Case No. 12–00085–MWF, 2012 WL 4343867, at *2 (C.D. Cal. Sept. 19, 2012).

As a result, here, even were Plaintiffs Lee and Stahlie successfully able to avoid consuming foie gras, they would still have standing under the reasoning in *Koehler* and *Henderson*. As with the consumer protection statutes in those cases, the purpose of the PPIA, in conjunction with the APA, is to ensure the USDA, through the FSIS, is properly regulating poultry products to ensure "adulterated" poultry products do not end up in the food supply. Holding that a judicial action such as Plaintiffs' could not be brought by any plaintiff who is aware of the health risks associated with the particular poultry product at issue would effectively be to hold that no suit could *ever* be brought to challenge a denial of rulemaking, since only a plaintiff aware of the health risks would have the information to bring the suit in the first place. That is not the law, and Defendants' argument on this ground must be rejected.

Plaintiffs Evans and Schurig are in a slightly different position than the *Koehler* and *Henderson* plaintiffs in that they allege they will continue to consume foie gras and other goose and duck liver products. Complaint ¶¶ 41, 43.  They are therefore certain to suffer the harms alleged from the consumption of foie gras and, consistent with the reasoning in *Koehler*, *Henderson*, and *Fortyune*, *supra*, they should not be prevented from seeking prospective relief. Again, to limit standing in this context to consumers who are unaware of the health risks would

be to eliminate entirely the ability to bring suit. Contrary to Defendants'

assertions, the individual Plaintiffs do have standing.[3]

        **5.**       **The Harm Incurred in Avoiding Consumption of Force-Fed Foie Gras Is Sufficient to Confer Standing.**

      Plaintiff Stahlie, a former consumer of foie gras, also has standing because,

due to Defendants' Denial in violation of the APA and PPIA, he has been forced

to avoid its consumption because of the associated health risks, including the

increased risk of developing amyloid-related diseases and contracting pathogens

such as *E. coli*. Complaint, ¶¶48-49. *See Denney v. Deutsche Bank AG*, 443 F.3d

253, 264-65 (2d Cir.2006) (holding risk of future harm sufficient to establish

Article III "injury in fact" may involve "economic costs, such as . . . preventative

steps."). Defendants do not rebut this argument.

        **6.**       **Regal Vegan Has Standing As a Competitor.**

      Plaintiff Regal Vegan, Inc. sells a foie gras substitute, "Faux Gras," and is

directly and competitively harmed by the presence of force-fed foie gras in the

American food supply and market. Complaint ¶¶39-40. Defendants are dismissive,

---

[3]    Defendants also improperly conflate *force-fed* foie gras with non-force-fed foie gras (*see* Petition at 2, n. 1 (AR4)) and duck and geese liver products generally, to make the argument that Plaintiffs can simply avoid this "luxury, niche product" and thereby prevent any harm to themselves. This is not the case. The individual Plaintiffs allege that they are consumers of foie gras and goose and duck livers *generally*, of which force-fed foie gras is an indistinguishable subset. Plaintiffs could find themselves eating duck or goose liver products without knowing whether the duck or goose had been force-fed or naturally fed.

    It is not the law that Plaintiffs should have to forgo some larger category of food product to avoid the harm caused by Defendants' own misconduct (nor is it reasonable for them to do so). *See Cutler v. Kennedy*, 475 F.Supp. 838, 850 (D.D.C. 1979) (finding that standing existed where plaintiff based his injury on his fear that he would be exposed to product ingredients that had not been tested by the FDA and that plaintiffs could not track which products contained these ingredients).

and argue that Regal Vegan lacks standing, however, stating that "the Poultry Products Inspection Act is not a statute that is designed to benefit competitors of products regulated under the Act." Defts. Cross-Mot. at 12. Citing 21 U.S.C. § 451, Defendants go on to state that "[i]nstead, [the PPIA] is designed, exclusively, to protect the health of consumers of poultry." *Id*.

Defendants' argument must again be rejected. Section 451 makes clear that the PPIA is meant to protect not just consumers, but competitors, stating in setting forth the findings underlying the PPIA, that "[u]nwholesome [or] adulterated . . . poultry products . . . *destroy markets for wholesome, not adulterated, and properly labeled and packaged poultry products*." (emphasis added).  And under the "zone of interests" test, a plaintiff must only show that its interests "*arguably fall within the zone of interests protected or regulated by the statutory provision . . .*" *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (emphasis added). As a producer of a substitute product that directly competes in the market for force-fed foie gras, Regal Vegan satisfies this standard, and thus, Regal Vegan has standing.

### 7. The Organizational Plaintiffs Have Standing Because Their Missions Include Protecting Consumer Health.

Defendants finally argue that the remaining four Plaintiffs, Animal Legal Defense Fund ("ALDF"), Farm Sanctuary, Compassion Over Killing ("COK"), and Animal Protection and Rescue League ("APRL"), lack standing because, as animal welfare organizations, they are outside the scope of the PPIA. Defts. Cross-Motion at 12-14. This argument must be rejected. While each of these organizations does work to prevent animal cruelty, one of their shared goals is also the health and education of consumers (emphases added):

- "ALDF has expended substantial organizational resources to educate the public about the animal welfare and *health consequences* of factory farming, including foie gras production." Complaint ¶52.

12

- "Farm Sanctuary documents the effects of industrialized animal agriculture on animals, the environment, *and human health*. . . . Farm Sanctuary has expended substantial organizational resources to educate the public about the animal welfare and *health consequences* of factory farming, including foie gras production." Complaint ¶¶53-54.

- "APRL has expended substantial organizational resources to educate the public about the animal welfare and *health consequences* of factory farming, including foie gras production." Complaint ¶ 58.

"[O]rganizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n. 19, 102 S.Ct. 1114, 71 L.Ed.2d 214 (citing *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). If an organization's injury is a frustration of its organizational purposes, the organization also must assert an injury beyond "a setback to the organization's abstract social interests." *See id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (finding that a fair housing organization has standing to sue under the Fair Housing Act where its resources were diverted to investigating and other efforts to combat defendant's discrimination); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dept. of Agriculture*, 415 F.3d 1078, 1102-1103 (9th Cir. 2005) (holding organization's purpose was economic rather than environmental and thus outside scope of National Environmental Policy Act).

Here, the agency action denying the Petition and allowing foie gras into the food supply has frustrated one of the missions of ALDF, COK, APRL, and Farm Sanctuary, namely to keep certain animal products, such as force-fed foie gras, out of the food supply, and educate consumers of these products about the associated health risks. Complaint ¶¶52, 53, 54, and 58. Each has also diverted substantial

resources in combatting the action and taking remedial steps with consumers, such as education, because foie gras is in the food supply. Complaint ¶¶52, 54, 56, and 58. Article III standing is thus satisfied for these organizational Plaintiffs.

**B.    Plaintiffs Do In Fact Have Standing; Defendants Did Not Contest Plaintiffs' Motion for Summary Judgment on Standing.**

Notably, Defendants have not opposed Plaintiffs' Motion for Summary Judgment on standing grounds. As detailed in Plaintiffs' Motion, and consistent with the arguments and allegations described above, Plaintiffs submitted declarations detailing the harm each has suffered and continues to suffer from Defendants' Denial of the Petition, and how that harm was traceable to the Denial and would be redressable by the entry of judgment in their favor. *See* Motion at 11-13; Attachments 1 through 9 (Dkt Nos. 22-1 through 22-9). Defendants have offered no evidence to contradict these affidavits. If the Court concludes Defendants' Motion for Judgment on the Pleadings should be denied – and it should be – the Court should conclude Plaintiffs have proven standing for the purposes of their Motion for Summary Judgment.

**III.   <u>Summary Judgment Should Be Granted in Favor of Plaintiffs and Defendants' Motion in the Alternative for Summary Judgment Should Be Denied.</u>**

On the merits, Defendants oppose Plaintiffs' Motion for Summary Judgment and Cross-Move for Summary Judgment on two primary grounds, each of which must be rejected. First, Defendants argue all but one study attached to the Petition were directed solely to concerns for animal welfare and that this evidence was thus "properly ignored." Second, Defendants argue the "Solomon study" showing a link between force-fed foie gras and the onset of amyloid-related diseases was insufficient on its own to support the Denial.

///

**A.      Plaintiffs' Object to Evidence Outside the Administrative Record Submitted Concurrently with Defendants' Cross-Motion and Opposition.**

As a threshold matter, Plaintiffs object to Defendants' submission of the Declarations of Alice M. Thaler and W. Scott Hafner (Dkt Nos. 26-1 and 26-2) in support of their Cross-Motion as impermissible evidence outside the administrative record.[4]  These objections are set forth in greater detail in Plaintiffs' Objections to Evidence submitted concurrently herewith. Plaintiffs object to portions of these declarations because review under the APA is generally limited to determining agency compliance with the law *solely* on the record on which the decision was made. As the Ninth Circuit has held, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1986) (emphasis added) (citations omitted); *Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450-51 (9th Cir. 1996).

The Ninth Circuit has allowed extra-record review or limited discovery in only the following four limited circumstances: (1) when the agency has failed to explain its actions so as to frustrate judicial review; (2) when it appears that the agency has relied on documents or materials not included in the administrative record; (3) when necessary to explain technical terms or complex subject matter involved in the agency action; or (4) when there is a strong showing of bad faith or improper behavior by the agency. *Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) ("*SWCBD*"). Each of these

---

[4]      Plaintiffs also object, in part, to the amicus brief submitted by Hudson Valley Foie Gras (Dkt. No. 29), and the supporting affidavit of Marcus Henley (Dkt. No. 31) on these grounds in their separate filed Plaintiffs' Objections to Evidence.

exceptions is narrowly circumscribed, however, *see Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005), and all presuppose a determination that the administrative record presented to the reviewing court is so inadequate as to frustrate effective judicial review. *See Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1986). Moreover, to be entitled to rely on extra-record material in a case involving review of agency action, the party seeking such reliance bears the burden of showing that one or more exceptions apply. *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1437-38 (9th Cir. 1988) (district court had properly limited its review to the administrative record because plaintiff "has not demonstrated that it falls within any of the exceptions to the general rule that review of agency action is limited to the administrative record").

Defendants purport to have submitted the Thaler and Hafner declarations under the exception that allows for the background explanation of "highly technical areas" (Defts. Cross-Motion at 3, n. 1). Not so. Defendants' Cross-Motion reveals these declarations, rather than being "necessary to explain technical terms or complex subject matter," are instead the bedrock of Defendants' arguments. Plaintiffs therefore object, for example, to portions of the Thaler declaration relied on by Defendants to conclude that "normal foie gras livers show no signs of inflammation" (Defts. Cross-Mot. at 18) or that "plaintiffs are mistaken in asserting that an enlarged liver results in toxemia (toxins in the bloodstream) or septicemia" (*id.* at 19). Plaintiffs also object to these declarations to the extent they attempt to introduce new evidence, such as condemnation rates at foie gras producers from 2010 – after the date of the Denial (Thaler Decl., ¶ 33), or studies from 2009 and 2012 (Hafner Decl., ¶¶ 8, 14-16).

These declarations do not reflect mere background information in highly technical areas, nor do they define highly technical terms. Rather, this extra-record evidence goes directly to the heart and substance of the issues in this case. Frequently, these declarations are cited as Defendants *sole* authority in their

16

Cross-Motion. Defendants should not be allowed to cure the lack of evidence in the administrative record to support their 2009 Denial by a post-hoc supplementation of that record now. Plaintiffs' objections should be sustained and the Court should disregard the portions of Defendants' Cross-Motion relying on these declarations and strike the corresponding paragraphs, as set forth in Plaintiffs' Response to Defendants' Statement of Uncontroverted Facts and Objections to Thaler and Hafner Declarations.

**B.     Large Portions of Evidence Do Not Pertain Solely to Animal Welfare; They Demonstrate Force-Fed Foie Gras Is "Adulterated" Under the PPIA and Presents Various Health Risks to Consumers.**

In their Opposition and Cross-Motion, Defendants argue for the first time that their disregard of all but one of the *sixty-five* exhibits attached to the "poorly supported" Petition amounts to no more than them "properly ignoring all irrelevant evidence relating to animal welfare." Defts. Cross-Motion at 17. This is a breathtaking mischaracterization of the evidence and complete misstatement of Defendants' obligations under the PPIA.[5]  Defendants' failure to examine this evidence and explain its Denial in spite of this evidence renders the Denial arbitrary, capricious, and contrary to law.

Agency action must be set aside where the agency has failed to "examine the relevant data and articulate a satisfactory explanation for its action, including a

---

[5]      This argument should also be rejected for the fundamental reason that the Court may not "infer an agency's reasoning from mere silence or where the agency failed to address significant objections and alternative proposals." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Rather, 'an agency's action must be upheld, if at all, on the basis *articulated by the agency itself*.'" *Id*. at 1073-74, quoting Motor Vehicle Mfrs., 463 U.S. at 50 (emphasis added).

17

1  rational connection between the facts found and the choice made." *Motor Vehicle*
2  *Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

3          Here, the evidence attached to the Petition showed that the birds used in
4  foie gras production fall squarely within the other conditions that mandate the
5  condemnation of foie gras and present risks to human health, including from the
6  presence of amyloids.

7          Specifically, as set forth in Plaintiffs' Motion, the Denial ignored the facts
8  that these animals:

9   •     exhibit systemic inflammatory processes including arthritis and bacterial
10         infections as proscribed by 9 C.F.R. § 381.86 (UF ¶¶29-32) [6];

11  •     suffer from an abnormal physiologic state, as proscribed by 9 C.F.R.
12         § 381.83, caused by the liver expanding to 6 to 10 times its original size,
13         restricting the birds' ability to move and breathe (UF ¶33);

14  •     are disabled, under 21 U.S.C. § 460(d), *i.e.*, unable to walk due to
15         enlargement of their livers and use of nutritionally deficient feed (UF ¶32)[7];

16  •     are dying, as proscribed by 21 U.S.C. § 460(d), and that many do in fact
17         die, because of the ailments caused by force-feeding (UF ¶34);

18  •     suffer from septicemia, as proscribed by 9 C.F.R. § 381.83, including due to
19         the presence of E. Coli and other bacteria (UF ¶28); and

20  •     suffer from toxemia, as proscribed by 9 C.F.R. § 381.83, *i.e.*, the presence
21         toxins in the blood due to the failing liver (UF ¶¶24-25). [8]

22
23
_____

24
25  [6]     "UF" refers to "Plaintffs' Statement of Uncontroverted Facts and
     Conclusions of Law" submitted concurrently with Plaintiffs' Motion for Summary
26  Judgment, Docket No. 22-10.
27  [7]     Defendant argues this section does not apply to producers of foie gras,
     Defts. Cross-Mot. at 19, but cannot dispute this section establishes that poultry
28  products made from "dying, disabled, or diseased" poultry are unfit for human
     consumption, and that such products would fall with 21 U.S.C. § 453(g)(3).

It is plainly not so that this evidence pertains only to animal welfare. Instead, <u>each</u> of these conditions show force-fed foie gras is adulterated and unfit for human consumption under the PPIA and FSIS's *own implementing regulations*, yet <u>none</u> was addressed in the Denial. The FSIS thus "entirely failed to consider an important aspect of the problem." *Beno v. Shalala*, 30 F.3d 1057, 1073 (9th Cir. 1994). Defendants' belated attempt to justify their disregard of this information therefore fails.

Instead of addressing this evidence, as set forth in greater detail in Plaintiffs' Motion, FSIS (1) offered a circular (and nonsensical) argument that because the physiologic state of the foie gras livers are caused by human practices and not a disease, they were not "adulterated" even though they are admittedly "abnormal" and "affected by hepatic lipidosis"; and (2) concluded that "additional research is needed on the potential human health effects associated with the consumption of foie gras," yet denied the Petition. The PPIA nowhere mentions a "wait-and-see" approach to a diseased and adulterated poultry product that may be unsafe for human health. *Cf. U.S. v. Bacto-Unidisk*, 394 U.S. 784, 798 (1969) (noting that there is "well-accepted principle that remedial legislation such as the Food, Drug, and Cosmetic Act is to be given a liberal construction consistent with the Act's overriding purpose to protect the public health"). Rather, it commands

---

[8]    Under the heading "Statutes and Regulations," Defendants mention in passing – *and without any citation to the administrative record* – that force-fed poultry (1) do not exhibit systemic inflammation; (2) do not show evidence of an abnormal physiologic state; and (3) are not dying, disabled, or diseased. Defts. Cross-Mot. at 17-19. These assertions are contrary to the evidence described herein and in Plaintiffs' Motion, and should therefore be rejected. Their only support is from the Thaler declaration which is outside the administrative record and should not be considered by the Court in determining whether the Denial – which was issued *in 2009* – was proper. *See Massachusetts v. EPA*, 549 U.S. 497, 533 (2007) ("But once EPA has responded to a petition for rulemaking, its reasons for action or inaction must conform to the authorizing statute").

the USDA, through the FSIS, to seize and condemn such a product. *See* 21 U.S.C. § 476b; 9 C.F.R. §§ 381.78; 381.210 *et seq*. Thus, the reasons FSIS gave for denying the Petition are disconnected from the governing statute, not in accordance with law, and the Denial must therefore be vacated under the APA, 5 U.S.C. § 706(2)(A).

### C. The Solomon Study Demonstrates the Consumption of Force-Fed Foie Gras Constitutes a Potential Risk to Human Health and Is Therefore "Adulterated" and "Unfit for Human Consumption" Under the PPIA.

#### 1. Secondary Amyloidosis and the Petition.

Defendants argue in their Cross-Motion that the "Solomon Study" provides "only the most remote support for plaintiffs' assertion that foie gras is a threat to human health" and that it "falls far short of the 'scientific fact, information, or criteria, 21 U.S.C. § 452, required before FSIS can even consider banning a product." Defts. Cross-Motion at 21. Defendants' arguments should be rejected because they overstate the study's limitations, and fail to point to any evidence in the administrative record countering the only conclusion one can reach from the study – that the consumption of force-fed foie gras increases a consumer's risk of developing secondary amyloidosis or other amyloid-related disease. In light of the other evidence of health risks, as described above and in Plaintiffs' Motion, Defendants' Denial was simply unjustified and without a "rational basis."

The Petition presented evidence that secondary amyloidosis, or AA amyloidosis, is a serious disease with a high mortality rate that affects humans. Secondary amyloidosis "leads to hepatomegaly (enlarged liver) and kidney failure, and is ultimately fatal." (UF ¶39). The Petition further explained that commercially available foie gras contains a specific, soluble protein called serum amyloid A-related (SAA) protein which, in a 2007 study published in the Proceedings of the National Academy of Sciences (the "Solomon Study"), served

as "a potent" factor in enhancing the onset of secondary amyloidosis, even when ingested orally. (UF ¶40). The Petition included evidence from Dr. Alexander Whitehead, who has studied SAA for more than twenty-five years and concluded "to a reasonable degree of scientific certainty" that "the AA from duck foie gras would be able to survive in the human stomach . . . and ultimately form potential nucleation sites in major human organs." (UF ¶41).

Although the prevalence of secondary amyloidosis in the human population is unknown, the majority of cases occur in people with "sustained inflammatory processes, particularly rheumatoid and juvenile chronic arthritis." (UF ¶42). As a result, the authors of the 2007 study concluded that "it would seem prudent for children and adults with rheumatoid arthritis or other diseases who are at risk for this disorder to avoid foods that may be contaminated with AA fibrils." *Id.* Because the AA fibrils "that form potential nucleation sites may persist in the host and support the development of secondary amyloidosis when chronic inflammation occurs at a later date," consumers who may someday develop a chronic inflammatory disease are also at greater risk for contracting secondary amyloidosis after eating foie gras. (UF ¶43). The amyloids in foie gras may also support the development of other amyloid-associated disorders such as Alzheimer's disease or type II diabetes. (UF ¶44).

In light of these studies, the Petition argued that force-fed foie gras "may cause health effects" (AR21-22) and that this evidence "raises the possibility that AA fibrils, such as those in foie gras, may lead to the development of other amyloid diseases, including Alzheimer's disease." (UF ¶40).

## 2.    The Denial and Defendants' Opposition.

FSIS denied the Petition on August 27, 2009 in a cursory two-page decision that failed to cite *a single* study, article, expert, or exhibit in support of its denial (the "Denial") (UF ¶¶45-46). With respect to the Solomon study, FSIS conceded that amyloidosis is common in foie gras and that the Solomon study demonstrated

a connection between the presence of amyloid and the onset of Secondary Amyloidosis. (UF ¶49). FSIS discounted the study, however, purportedly because amyloid could be present for reasons other than force-feeding, and because the study involved animals, not humans, under "experimental conditions." (UF ¶50). The FSIS ultimately concluded, however, "that *additional research is needed on the potential human health effects associated with the consumption of foie gras.*" (UF ¶51) (emphasis added).

In their Cross-Motion, now realizing the deficiencies in the Denial's treatment of the Solomon Study and related evidence, Defendants now examine the issue in greater detail. Defendants, based on an improperly submitted declaration outside the administrative record, now argue (1) the use of mice predisposed to develop amyloidosis overstates the potential risk; (2) there is no basis to conclude foie gras could contribute to other amyloid-related diseases; (3) there are other sources of amyloids; and (4) the research is only preliminary. Defendants do not and cannot, however, point to any evidence in the administrative record that counters the conclusion drawn from the Solomon Study that the increased amyloids found in force-fed foie gras raises health risks to its consumers.

### 3. There is no Rational Connection Between the Finding that Additional Study is Required and the Denial.

There is no "rational connection" between the FSIS's conclusion that, based on the Solomon Study, there might be potential health risks associated with foie gras, and its refusal to exclude foie gras from the food supply. Indeed, there is no reason, in logic or fact, to (a) conclude that further research is necessary to ascertain human health risks of foie gras, yet (b) permit that product to enter the human food supply. This irrational conclusion renders the Denial arbitrary. After all, the goal of the PPIA is "that the health and welfare of consumers be *protected* by *assuring* that poultry products distributed to them are wholesome [and] not

adulterated." 21 U.S.C. § 451 (emphasis added). Food that may cause direct risks to human health because of the presence of amyloids should not be allowed into the food supply pending "additional research." The Denial articulated no rational basis for a contrary conclusion and must therefore be set aside.

Defendants' seek to explain away this evidence but cannot do so. The Declaration of Scott Hafner upon which Defendants almost entirely rely in attempting to discredit the Solomon Study is not a part of the administrative record and therefore cannot now be used to explain the agency's action. "Rather, 'an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Moreover, in the absence of contrary evidence, the limitations of the Solomon Study do nothing to alter the conclusion that the increased consumption of amyloids from force-fed foie gras presents a health *risk* to human consumers. In light of the other evidence of health risks, as described above and in Plaintiffs' Motion, Defendants' Denial was simply unjustified, lacked a rational basis, and was contrary to the evidence in the record.

## IV.   An Order Directing Defendants to Initiate Rulemaking is Appropriate in the Present Case.

Contrary to Defendant's assertion, a court order for rulemaking is both proper and necessary in this case. Defendants correctly state the general rule that, where an agency fails to properly justify its action, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light v. Lorion*, 470 U.S. 729, 744 (1985). Directed rulemaking is an appropriate remedy, however, "if a significant factual predicate of a prior decision on the subject (either to promulgate or not to promulgate specific rules) has been removed." *WWHT, Inc. v. Federal Communications Com.*, 656 F.2d 807, 819 (D.C. Cir. 1981). Courts are especially likely to overturn a decision not to institute rulemaking if the case involves "grave

1  health and safety problems for the intended beneficiaries of the statutory scheme."
2  *National Customs Brokers & Forwarders Ass'n v. United States*, 883 F.2d 93, 103
3  (D.C. Cir. 1989); *see also Public Citizen v. Heckler*, 653 F. Supp. 1229 (D.D.C.
4  1986) (ordering a new rule prohibiting the interstate sale of certified raw milk
5  after research linked significant health risks to the product).

6       Given the new research demonstrating the health risks of force-fed foie
7  gras, and the serious threat to consumers, an order directing Defendants to issue a
8  new rule is appropriate here. Defendants' past practice of allowing force-fed foie
9  gras into the human food supply was developed before the Solomon Study linked
10  the product to such deadly diseases as secondary amyloidosis, Alzheimer's
11  disease, and type II diabetes. These newly-discovered risks undermine
12  Defendants' previous assumptions about the safety of force-fed foie gras, and
13  Defendants' refusal to initiate rulemaking in light of this new information is
14  arbitrary and dangerous. In order to protect consumers, and to uphold the purposes
15  of the PPIA, this is one of the "rare circumstances" where a court order directing
16  agency rulemaking is appropriate.

17  **V.   CONCLUSION**
18       For the reasons detailed above, the Court should deny Defendants' Motion
19  for Judgment on the Pleadings and Cross-Motion for Summary Judgment, and
20  instead set aside the Denial and remand the matter to Defendants with instructions
21  to initiate rulemaking condemning force-fed foie gras. *See Am. Horse Prot. Ass'n,*
22  *Inc. v. Lyng*, 812 F.2d 1, 7 (D.C. Cir. 1987) (remanding with instructions to

23
24
25
26
27
28  ///

1  institute rulemaking after finding that agency had not provided sufficient reasons
2  for its denial of a petition for rulemaking).

3

4                                              STEPTOE & JOHNSON LLP

5

6

7                                              By:        /s/ Morgan L. Hector
                                                          Morgan L. Hector
8                                                         Attorneys for Plaintiffs

9

10                                             ANIMAL LEGAL DEFENSE FUND

11

12

13                                             By:        /s/ John Melia
                                                          John Melia
14                                                        Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO CROSS-MOTION; REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No. 12-04028-ODW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIGNATURE ATTESTATION

All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content, and have authorized the filing.

STEPTOE & JOHNSON LLP


By:      /s/ Morgan L. Hector
         Morgan L. Hector
         Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

### F.R.C.P. 5

I hereby certify that on December 21, 2012, I electronically filed the foregoing: PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT; REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; OBJECTION TO THALER AND HAFNER DECLARATIONS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

### *PLEASE SEE ATTACHED SERVICE LIST.*

Executed at Los Angeles, California, this 21st day of December 2012.

STEPTOE & JOHNSON LLP


By:     /s/ Morgan L. Hector
                Morgan L. Hector
                Attorneys for Plaintiffs

OPPOSITION TO CROSS-MOTION; REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No. 12-04028-ODW

1

## <u>SERVICE LIST</u>

2

3    Daniel E Bensing
     U S Department of Justice
4    Civil Division
     20 Massachusetts Avenue, N W
5    Room 6114
     Washington, DC 20001
6    202-305-0693
7    Email: Daniel.Bensing@USDOJ.gov
     Attorneys for DEFENDANTS
8

9

10   Carter Dillard
     John Melia
11   170 East Cotati Avenue
12   Cotati, CA 94931
     707-795-2533
13   Fax: 707-795-7280
14   Email: wcromwell@aldf.org
             jmelia@aldf.org
15   Attorneys for PLAINTIFFS
16

17

18   Danial J. Cross
     Cross Law Corporation
19   26060 Acero
20   Mission Viejo, CA 92691
     619-756-6390
21   Fax: 866-203-3118
22   Email: dcross@crosslawcorp.com
23   Attorneys for Amicus Hudson Valley Foie Gras

24

25

26

27

28

Opposition to Cross-Motion; Reply in Support of Motion for Summary Judgment
Case No. 12-04028-ODW